D. S. CHAMBERLAIN, *et al.*, v. IOWA TELEPHONE COMPANY, Appellant.

Telephone Companies: RIGHT TO OCCUPY STREETS IN CITIES AND TOWNS: TERM "HIGHWAY" INCLUDES STREET: CONSTRUCTION OF STATUTE. The term "highway" as used n section 1324 of the Code of 1873 includes streets and alleys in a city or incorporated town, and under said section as amended by chapter 104 of the Acts of the 19th General Assembly, a telephone company may occupy the streets and alleys of a city or town without any express grant of that right by the municipality.

*Appeal from Polk District Court.*—HON. S. F. PROUTY Judge.

THURSDAY, FEBRUARY 12, 1903.

ACTION to restrain the defendant from occupying the streets and alleys in the city of Des Moines with its telephone poles and wires. There was a hearing on the plaintiff's application for a temporary injunction, and an order made restraining the "defendant, Iowa Telephone Company, its officers, agents, etc., from digging, excavating, obstructing, erecting, or replacing telephone poles and posts, and from stringing or restringing wires and cables

in, on, or along the streets of the city of Des Moines, Polk county, Iowa, known as 'West Grand Avenue,' between West Seventeenth street and Park Lane, and that said writ of injunction be and remain in full force and effect from and after this date until otherwise ordered by this court." The defendant appeals.—*Reversed.*

*E. E. Cook, L. G. Richardson* and *N. T. Guernsey* for appellant.

*J. C. Hume* for appellees.

SHERWIN, J.—The plaintiffs are residents and taxpayers of the city of Des Moines, owning residences fronting upon West Grand avenue in said city, along which the defendant maintains a telephone line as a part of its plant extending over the city. This plant was originally built by the Des Moines Telephone Exchange Company about 1880, and in 1881 was sold to the Western Telephone Company, who in turn sold it to the Central Union Telephone Company, whose successor the defendant is. In 1891 the city council of Des Moines granted to the Central Union Telephone Company a five-year franchise, authorizing it to occupy the city streets and alleys with its poles and lines. This franchise, or the ordinance granting it, was accepted in writing by the telephone company, and its plant operated thereunder for the designated period. There has never been a renewal of the franchise, and since its expiration various efforts have been made by the city to oust the defendant from the use of its streets and alleys. The defendant refuses to vacate, on the ground that it has the right to so occupy the city's streets and alleys under authority given by section 1324 of the Code of 1873, as amended by chapter 104 of the Laws of the 19th General Assembly, as follows: "Any person or company may construct a telegraph or telephone line along the public highways of

this state or across the rivers, or over any lands belonging to the state or to any private individual, and may erect the necessary fixtures therefor."

The question, then, is whether this statute gave telegraph and telephone companies the right to occupy the streets and alleys in cities and incorporated towns without authority from such cities and towns. That the legislature has, in the absence of constitutional restraint, full and paramount authority over all public ways, whether urban or rural, is well settled and conceded. It is also conceded that a city cannot, without express statutory authority, authorize the use of its streets by private persons, and it is not contended that such power had ever been given the city of Des Moines prior to the Code of 1897. The part of section 1324 of the Code of 1873 material to the question before us was the same as section 1348 of the revision and section 780 of the Code of 1851, and until its amendment in 1882 applied to telegraph companies only.

The intention of the legislature which passed this act is the first thing to be sought, and the meaning of the words "public highways," as used therein, must depend on this intent, as it can be gathered from either the words, the context, the subject-matter, the effect and consequences, or the spirit and reason of the law. 1 Cooley's Blackstone, 59; 15 Am. & Eng. Enc. Law, 350 (2d Ed.) It is the general holding that "the term 'highway' is the generic name for all kinds of public ways, including county and township roads and streets and alleys." Elliott on Roads and Streets, 1 (2d Ed.); *Stokes et al., v. The County of Scott*, 10 Iowa, 166; *Sachs v. City of Sioux City*, 109 Iowa, 224. That the term does not, in all instances, include or mean streets and alleys, may be admitted, but that it is broad enough to include them cannot be denied. When this act first became law, telegraphy was in its infancy, the Morse system having been first used for commercial purposes between Baltimore and Washington in

1844. This state was at that time in its infancy also, having but few cities and incorporated towns, none with large populations, and having a vast area of productive land wholly unoccupied, over which no highways had then been regularly laid out or established. The commercial interests of the state were at that time confined to a comparatively small territory, and were generally located along the great water highways bounding the state on the east and on the west. Its agricultural interests were small, and limited in area.

It is a matter of common knowledge that the first great use to which the telegraph was put was for commercial purposes, and that to accommodate the public, and to secure this business, its terminals must be located in the larger business centers, where, as a matter of fact, they have always been located. That was the condition when the act in question was first passed, and it has continued up to the present moment; and that it was fully recognized by that and subsequent legislatures does not admit of doubt. If this be conceded,—as we think it must be,—what was the purpose and scope of the act? It cannot be possible that the legislature passed it with the thought or intent that the words "public highways" meant only rural ways, because the use of rural ways only for the grant would be of no benefit to the public or to the owners of the lines. Cities and incorporated towns had no power to permit such companies to use their streets and other public places for their poles and lines, and, unless that power was given in the act in question, they had no right to enter thereon. This condition of the law and its result, the legislature is presumed to have known, and it will also be presumed that the law was framed and enacted to meet the conditions as they then existed.

It is argued, however, that, because of the statutory definition of the word "highway," the grant must be limited to the use of rural ways. The dictionary statute

(section 26, paragraph 5, of the Code of 1851), which has been continued to the present time, was as follows: "The words 'highway' and 'road' include public bridges and may be held equivalent to the words 'county-way,' and 'county-road,' 'common road,' and 'state road.'"  The research of counsel has given us the benefit of the construction placed upon similar statutes in many other states, but we think it would serve no useful purpose to review the decisions, because they are all dependant upon the wording of the statutes the courts were considering, and upon the legislative or judicial construction given them, while we must be governed by the construction which has been given our own statute.  The language of the act is that the word "highway" "may be held equivalent to," etc.; and, were there no contemporaneous use of the word by the legislature which indicated a different intention or understanding, it might be said that the definition excluded streets and alleys.  An examination, however, of the enactments of different legislatures granting powers to cities and towns clearly shows that the definition was not so intended, and has not been so understood.  The words "highway" and "streets" have time and time again been used interchangeably by the law makers.  A most notable instance of this is to be found in section 466 of the Code of 1873, which gives to cities and incorporated towns the power to "construct sidewalks, to curb, pave, gravel, macadamize, and gutter any highway or alley therein."  It will be noticed that in this section the word "streets" is not used at all, and yet it was the only statute under which such improvements might be made on the streets of a city.  Can the meaning of the word "highway," as there used, be doubted for a moment?  We think not.

The case of *Stokes v. The County of Scott, supra,* is cited as giving a construction of the statute which would exclude streets and alleys, but we do not so understand it.   In

that case it was contended that the word "road" meant "railroad," and it was held that the word could not be so construed, because that was evidently not the intention of the legislature, and it is said "that the word 'road,' according to Webster, applies generally to highways, and as a generic term includes highway, street, and lane." In *Marks v. The County of Woodbury*, 47 Iowa, 452, the only question was whether the township trustees of the township in which Sioux City was situated had the power to levy a road tax upon the property within the city. It was held that they had not, because the city council had the care and control of all "highways and streets," which necessarily excluded the care and control of any other officers. *Clark v. The Town of Epworth*, 56 Iowa, 462, holds that a city or town having the care and control of its, streets and highways is bound to repair them, and is liable for a failure so to do.

The same principle is applied in *Gallaher v. Head et al.*, 72 Iowa, 173. In the case of *Sachs v. City of Sioux City*, 109 Iowa, 224, the plaintiff was injured by the falling of a bridge over a stream within the city. The statutory notice to the city was not given before suit, and it was contended that it was not necessary, because the bridge was no part of the street. We there discussed the dictionary statute in question, and section 1001 of the Code of 1873, which says that "bridges erected or maintained by the public constitute parts of the highway," and said, "As. 'highway' is the broader term, it would seem it should be held to include streets, and, if so, that a bridge must be construed, under these statutes, as a part of the street." The supreme court of Minnesota has recently had under consideration a telephone right of way statute very similar to our own, and holds that it gave the right to use urban as well as rural ways. *Northwestern Telephone Exchange Company v. The City of Minneapolis et al*, 86 N. W. Rep. 69 (53 L. R. A. 175). See, also, *City of Duluth v. Duluth*

*Telephone Co.*, 84 Minn. 486 (87 N. W. Rep. 1127); and *Abbott v. The City of Duluth*, (C. C.) 104 Fed. Rep. 833.

In the case of *Milburn v. The City of Cedar Rapids*, 12 Iowa, 246, this court had under consideration sections 1321 and 1322 of the revision of 1860, which were as follows:

"Sec. 1321.   Any railroad corporation may raise or lower any turnpike, plank road, or other way for the purpose of having their railroad pass over or under the same; and in such cases said corporation shall put such turnpike, plank road, or other way, as soon as may be, in as good repair and condition as before such alteration.

"Sec. 1322.   If the proprietors of said [plank road or turnpike, or the trustees or city council having jurisdiction of such ways, respectively, require further alterations or amendments of such turnpike, road, or way, and give notice thereof in writing to the agent or secretary of such railroad corporation, and if the parties cannot agree respecting the same, either of the parties may apply to the county judge who, after reasonable notice to the adverse party, shall make determination respecting such proposed alterations or amendments, and shall award costs in favor of the prevailing party."

And it was held that section 1321 gave to railroad companies "the privilege of running their tracks upon the streets of the city."   The opinion seems to rest upon the construction of section 1321 alone, and, so construed, is in harmony with what we have heretofore said.   But it is argued by the appellee that it is based upon the joint construction of both sections, because section 1322 gave to city councils having jurisdiction of such ways some control over the contemplated alterations.   But, if this position be conceded, it follows that the case is directly in point, and supports the appellant's contention that statutes which are in *pari materia* should be construed together, for, when read together, sections 1321 and 1322 present practically

the same condition that existed after the enactment of the statute of 1888, giving cities control over telegraph and telephone companies.

Whatever rights telegraph companies were given by the original act were conferred upon telephone companies by chapter 104 of the Laws of the 19th General Assembly. It matters not whether telegraph companies made a limited use of the streets and alleys of cities or not. They were not so limited by the law, and this was well known. It was also known by all that the principal business of telephone companies was confined to urban ways. True, they had then used rural ways to a limited extent, and it may have been apparent to the legislature that the rural service would be extended, and the long-distance phone finally become one of the great public conveniences and necessities which it now is. But, notwithstanding this, they were given the use of highways and streets without limitation, and without control by city authorities. If the legislature had intended to limit their use of the streets to long-distance service, it would doubtless have done so by the use of apt words. That such was not its intention is further manifest from the fact that prior to the amendatory act in question this court had practically held that the words "telegraph companies," as used in the statute, included telephone companies. *Iowa Telephone Co. v. Board of Equalization*, 67 Iowa, 250; *Franklin v. Northwestern Telephone Co.*, 69 Iowa, 97.

But our decision need not rest on the foregoing considerations alone. The 22d General Assembly, by chapter 1 of its acts, provided for a board of public works in all cities of the first class having a population of more than 30,000, and further provided: "It shall have power and be required by and with the advice of the city engineer to superintend the laying of all water, gas and steam heating mains and all connections therefor, and laying of telephone, telegraph, district telegraph, and electric wires in

the manner provided by the ordinances of such city." And by chapter 16 of its acts it gave additional powers to certain cities; among others, the power "to regulate tele- graph, telephone, electric light, district telegraph, and other electric wires, and provide the manner in which and the places where the same shall be placed, upon, along or under the streets and alleys of such cities." It can hardly be seriously argued that the quoted language from these two acts does not relate to the use of streets and alleys by telegraph and telephone companies; and, if the acts do relate to that matter, they must be taken into considera- tion in construing the telegraph and telephone statute, for it is a rule of universal application that several statutes relating to the same thing must be so considered. *Harri- man v. State*, 2 G. Greene, 270; *State v. Shaw*, 28 Iowa, 78; *State v. Sherman*, 46 Iowa, 415; 1 Cooley's Blackstone, 60-62 (4th Ed.)

In *Alexander v. Alexandria*, 5 Cranch, 1 (3 L. Ed. 19), Chief Justice Marshall said: "If, in a subsequent clause of the same act, provisions are introduced which show the sense in which the legislature employed doubtful phrases previously used, that sense is to be adopted in construing those phrases. Consequently, if a subsequent act on the same subject affords complete demonstration of the legis- lative sense of its own language, the rule which has been stated, requiring that the subsequent should be incorpor- ated into the foregoing act, is a direction to courts in expounding the provisions of the law." See, also, *United States v. Freeman*, 3 How. 556 (11 L. Ed. 724). If any doubt could exist as to the meaning or intention of the previous statutes, it is removed by the construction given it by the legislature in the later acts above set out, for they should be regarded as "legislative interpretation thereof." *Cope v. Cope*, 137 U. S. 682 (11 Sup. Ct. Rep. 222, 34 L. Ed. 832); *Stockdale v. The Insurance Company*, 20 Wall. 323 (22 L. Ed. 348); *Town of Highgate v. State*,

(Vt.) (7 Atl. Rep. 898). "The legislature is presumed to have had former statutes before it," and to have known fully their scope and purpose. *State v. Gerhardt,* 145 Ind. Sup. 439 (44 N. E. Rep. 469, 33 L. R. A. 313). If the telephone right of way statute did not confer the power to use streets in cities, the legislature would not have given cities control over the location of the poles and wires. When, however, the statutes are construed together, they are in perfect accord.

We reach the conclusion that the defendant's use of the streets and alleys in Des Moines is authorized by the statute, and that its Grand Avenue line is not a nuisance *per se.* As the main case is pending this decision, we do not determine any other questions.—REVERSED.