THE FARMERS TELEPHONE COMPANY OF QUIMBY, IOWA, Appellant, v. THE TOWN OF WASHTA and Others, Appellees, and IOWA TELEPHONE COMPANY, Intervener, Appellant.

**Municipal corporations:** FRANCHISES: STATUTORY REQUIREMENTS: 1 PROOF OF COMPLIANCE. Under the provisions of Code, section 683, 775, 776, a franchise to use its streets can only be granted by a majority vote of the electors of the municipality, at a regular or special election called for that purpose, which must be brought about by a submission of the question by a yea and nay vote of the council and the giving of notice; and the action of the council in authorizing a submission of the question, together with the election proceedings, must be shown by the records of the council to have been in conformity with the statutes, to establish the granting of a valid franchise; as no presumption will be indulged in favor of compliance with the statutory requirements, and parol evidence is not sufficient to establish that fact.

**Same:** TELEPHONES: ESTOPPEL. A municipality is not estopped from 2 relying on the invalidity of a telephone franchise, where for a number of years the company made no attempt to exercise its rights thereunder by the establishment of an exchange, except to maintain a toll line into the municipality; and a decree requiring the removal of an exchange constructed under the protection of an injunction, but permitting maintenance of the toll line, was proper as against the claim of estoppel.

**Same:** TELEPHONES: STATUTES: FRANCHISE: CONDITIONS PRECEDENT. 3 Code, section 2158, authorizing the construction of telegraph and telephone lines along public roads must be construed with reference to other provisions of the statutes on the same subject, and not as granting the absolute and unconditional right to occupy the streets and alleys of a municipality without its consent first obtained, as provided by sections 775, 776; for the power therein granted to cities and towns is not merely to regulate, but is to authorize or prohibit, and the procuring of a franchise from the municipality and its ratification by the electors are conditions precedent to the right to occupy its streets with a telephone system.

McClain, J., dissenting.

*Appeal from Cherokee District Court.*—HON. WILLIAM
HUTCHINSON, Judge.

WEDNESDAY, NOVEMBER 20, 1912.

ACTION in equity. The nature of the controversy and
the material facts are stated in the opinion.—*Affirmed.*

*J. D. F. Smith* and *Guernsey, Parker & Miller,* for
appellants.

No argument for appellees.

WEAVER, J.—The facts, as we derive them from the
abstract and amended abstract, are substantially as follows:
In the year 1898, the Iowa Telephone Company, intervener
herein, entered into negotiation with officers of the town
of Washta, with the view of obtaining a franchise for the
establishment and operation of a telephone exchange in
that municipality. An ordinance, granting such franchise,
was prepared and introduced into the town council, and it
is the claim of the appellants that such ordinance was duly
passed and became effective on May 16, 1898. The only
record evidence of such passage shown in the testimony is
found in the clerk's minutes of the proceedings of the
council, and reads as follows: "Washta, Iowa, May 16,
'98. Council met in spl. session, Mayor Marshall presiding.
Members present: P. J. Kennedy, A. W. Bowers, Thomas
Boothby, W. C. Ruff, A. B. Bushgens, and U. C. Rogers.
Mov. and sec. that ordinance No. 33 be passed on first
reading. Carried. Mov. and sec. rules be suspended and
ordinance No. 33 be passed as to second and third reading.
Carried. Mov. and sec. that ordinance No. 33 be passed
as read. Carried. R. Sullivan, Clerk."

It is also the claim of appellants that this ordinance
or grant was approved by vote of the electors of the town

at an election duly called for the purpose. The only record of the calling or holding of such election, or of its result, is found in a minute entered in the clerk's book as follows: "Washta, Iowa, August 5, 1898. At a special election held for or against the Iowa Bell Telephone franchise, held on above date, resulted as follows: For 29; against, none. R. Sullivan, Clerk, by G. E. McKee, pro tem."

It is further claimed by the intervener that soon after the date last above mentioned it executed a written acceptance of the terms of said ordinance No. 33, and sent the same by mail to the proper officers of the town.

The terms of said ordinance purport to grant to the Iowa Telephone Company the right for a term of twenty-five years to erect and maintain upon the streets, alleys, and public highways of the town a telephone system for the convenience of its people. In the fall of 1898, the intervener extended a telephone line from the city of Cherokee to the town of Washta. Subsequently, beginning at a point several miles out from the town of Washta, this line was connected with another, extending to Correctionville. No local exchange or switchboard was furnished, and the line as constructed and used was available only as a toll line for those who might wish to have communication with other towns covered by the Iowa Telephone Company's system. About October 1, 1907, the intervener executed to one F. L. Cooper a lease of the use of its "exchange located at Washta, Iowa," "together with the right to exercise the rights and franchises of the Iowa Telephone Company in maintaining, operating, and executing the rights and franchises of the Iowa Telephone Company in maintaining, operating, and executing said exchange," for a period of five years.

On April 8, 1908, Cooper, in writing, undertook to assign all his rights under said contract of lease to the Farmers' Telephone Company, of Quimby, Iowa, the plain-

tiff in this action.  On April 13, 1908, this action was begun against the town of Washta and its officers, setting up said lease, alleging that the exercise of said company's rights under the lease are being interfered with by the defendants, and asking that they be restrained and enjoined from interfering with its poles and wires, and from in any manner obstructing the efforts of said plaintiff to extend, enlarge, and maintain its telephone system in said town. The defendants appear, and by answer deny that any franchise was ever in fact granted to the Iowa Telephone Company, and deny that the alleged ordinance No. 33 was ever properly enacted by the council, or approved by vote of the electors.  They admit having interfered with and have forbidden the plaintiff to set certain poles and string certain wires which it was attempting to place upon the streets of the town, without lawful right, and in violation of the regulations duly prescribed by said town.  The Iowa Telephone Company makes itself a party. to this action by intervention, and in effect unites with the plaintiff in praying for an injunction, and to this petition the defendants plead practically the same defenses.  The pleadings, which are very prolix and somewhat complicated, contain much other matter which, so far as necessary to be considered, will be mentioned later.  The trial court found for the defendants, and dismissed both the original bill and the petition of intervention.  Plaintiff and intervener appeal.

It should also be said that, pending the proceedings below, a temporary injunction was issued, under a protection of which the plaintiff set its poles, strung wires, and established a local telephone exchange, and that upon the final hearing the injunction was dissolved, and the plaintiff ordered to remove the wires and poles so placed, and to cease from any attempt to establish or operate such exchange.

I.  The position of the appellants is that the dis-

puted ordinance No. 33 and the intervener's alleged accept-
ance thereof constitute a contract between the town and the
intervener, and that by the lease to Cooper
and the assignment above mentioned plaintiff
has succeeded to the intervener's right to
erect and maintain a local telephone system.
The power of the town to make grants of
such franchises or to enter into contracts of that nature is
of course such only as is conferred upon it by statute.  At
the date in question, the power and the manner in which it
might be exercised had been fixed and defined by legisla-
tive enactment (Code, sections 775 and 776).  By its terms,
no franchise could be granted for the use of the public
streets and ways, unless a majority voting thereon favor the
same at a general election, or one specially called for that
purpose.  That vote is to be procured by an order of the
council, submitting the question to be voted upon.  Notice
thereof is to be given in the manner and for the time speci-
fied in the statute, and the duty of preparing the ballot is
placed upon the clerk.  Except the brief memorandum al-
ready quoted, under date of August 5, 1898, the town rec-
ords are wholly blank upon the proposition whether the
council ever ordered the submission of the approval of this
franchise to the voters, whether notice of such action was
ever published as required by law, or whether such election
was ever held.  Moreover, the sole record of the passage
of the ordinance, if passed at all, shows it to have been
upon its first reading, under suspension of the rules; but
neither upon this proposition nor upon final passage is there
any record of yeas and nays, as the statute requires (Code,
section 683), nor is it recorded that the vote was unani-
mous.

To aid this confessedly very imperfect showing, a
witness was introduced, who testified that in 1898 he was
publishing a paper in Washta, and produced a copy of said
newspaper, containing what purports to be a printed report

*1. MUNICIPAL CORPORATIONS: franchises: statutory requirements: proof of compliance.*

of the proceedings of the town council, at which a motion was made for the calling of an election; but even this report, if otherwise competent, fails to show that said motion was ever put to the council, or voted upon by its members. The same paper also contains a purported copy of a notice of election, and it is admitted that this notice was published in said paper for four weeks ending August 4, 1898.

Testimony was also offered by two witnesses, who were members of the town council of 1898, who state their personal recollection that the vote upon passage of the ordinance was unanimous, and one of the members that at another meeting, of which there seems to be no record of any kind, an order for an election was also voted.

This and all other evidence extrinsic of the records of the town council was introduced subject to the objection of the defendants as to its competency. Other evidence offered, which we do not stop to specifically set out, does not, in our opinion, add to or detract from the strength of the plaintiff's case as developed in the recitation of facts already given. We regard it clear that there is a failure of proof of the granting of a franchise to the intervener, pursuant to the statute then and now in force. Whether such grant may be by resolution, or must be by formal ordinance, it can be validly enacted only by a vote in meeting duly assembled, upon which vote the yeas and nays must be "called and recorded." Code, section 683. No presumption can be indulged in this respect. *Olin v. Meyers,* 55 Iowa, 209; *Markham v. Anamosa,* 122 Iowa, 692; *Cook v. Independence,* 133 Iowa, 582; *Rich v. Chicago,* 59 Ill. 286. Nor can this omission be cured by parol evidence. *Cook v. Independence, supra; McCormick v. City,* 23 Mich. 457; *Stevenson v. City,* 26 Mich. 44; *Pickton v. Fargo,* 10 N. D. 469 (88 N. W. 90); *Morrison v. Lawrence,* 98 Mass. 219. It is the *recorded* yea and nay vote which the statute requires and not the mere fact of such vote. To hold that a fact which the statute provides shall

be made a matter of official record may be established by parol would amount to judicial repeal of a legislative enactment.

This is not an action to correct a record, nor is it a case of a lost record, of the contents of which secondary evidence is offered; but it is an attempt to establish a legislative act of a town council as it happens to be registered in the uncertain recollections of some of the members of that council ten years after date of the alleged act, and to give to this oral testimony the force and effect of a record which the statute specifically requires. This we are quite certain can not and ought not be done.

II. Appellants plead and argue that in any event, and whatever the rule may be in this respect, the town of Washta is estopped to deny the grant of the alleged franchise. We shall not stop to consider the somewhat interesting question whether, in face of a statute restricting the power of a municipal corporation to grant franchises, such corporation, or the people of such city or town, may estop themselves to deny that statutory conditions precedent to the grant have been complied with. The claim of estoppel in this instance rests upon the theory that the town and its citizens have permitted the appellants to assume the existence of such franchise, and to expend money, time, and labor in exercising their supposed rights thereunder, all of which will be lost, if the decree below is upheld. We do not so understand the record. At the time this controversy arose ten years had passed since the attempted passage of the ordinance. During that time, appellants had exercised no rights thereunder, unless it be to string their toll line into the town, giving the people this opportunity of communication with such parts of the outside world as were served by the Iowa Telephone Company, but it had made no attempt to exercise any claim or right to establish a local exchange, or afford the people of the place the conveniences

2. SAME:
   telephones:
   estoppel.

of intercommunication by telephone. The decree below does not deny to the plaintiff or to the intervener the right to keep, maintain, or operate its toll line as it existed up to the time when the city denied their right to establish a local exchange and undertook to grant that right to a rival concern. The effect of the decree below, as we read it, is to restrict appellants to the maintenance and use of the toll line, and this would seem to be the utmost extent to which they can properly assert any right, even if it should be held that there is any equitable basis for their plea of estoppel.

III. It is finally insisted that the statute (Code, sections 775 and 779), does not operate to restrict appellants' right to establish or maintain a telephone system in the town of Washta, and that under Code, section 2158, they are authorized to place such system upon the streets of said town, without first obtaining a franchise therefor.

3. SAME: telephones: statutes: franchise: conditions precedent.

By section 775, cities and towns are given the power to "authorize and regulate" telephone, street railway, and other electric wires, and to provide the manner in which and the places where the same may be erected upon the public streets. The next section provides that no franchise shall be granted, renewed, or extended by any city or town, for the use of its streets, highways, alleys, or public places, unless a majority of the legal electors voting thereon shall favor the same at a general election or special election called for that purpose, and in the manner therein prescribed. The other statute referred to (Code, section 2158) is found in the chapter on telegraph and telephone lines, and reads as follows: "Any person or firm or any corporation organized for such purpose may construct a telegraph or telephone line along the public roads of the state or across the rivers or over any lands belonging to the state or any private individual and may erect the necessary fixtures therefor."

The point now made, if we understand counsel, is that the right conferred by this latter section to use the public roads, including streets of cities and towns, is absolute and unconditional, and that if there be any inconsistency between such provision and those contained in sections 775 and 776, the latter must yield. With an amendment enacted to include telephones with telegraphs, the provision above quoted from section 2158 of the Code of 1897 had its origin in the Code of 1851, section 780, and was repeated in the Revision of 1860 and Code of 1873. Specific provision for corporate authority over the streets of cities and towns is of somewhat later origin. As finally expressed in the Code of 1897, the municipal corporation is charged with the care, supervision, and control of all public ways within its limits (Code, section 753), and this authority extends to the opening, vacating, grading, paving, lighting, and otherwise improving such ways. Indeed, from the time when cities and towns were first authorized to incorporate and became, within defined limits, self-governing neighborhoods, the care and control of their streets have been quite uniformly regarded as coming appropriately within their special domain; and persons and corporations seeking to use such streets in the establishment of works of public uitlity or private profit have been quite generally expected to obtain the permission of and comply with the reasonable terms imposed by the city or town in whose jurisdiction the enterprise is to be launched. The right to so use the streets has been regarded a franchise, without a grant of which by proper municipal authority the proposed work could not be lawfully undertaken. What may be the limit, if any, of legislative power, throwing open all public streets and highways to the exploitation of works of real or alleged public utility, without franchise or permission from cities or towns affected by them, we need not here discuss. We may, for the purposes of this case, assume that under section 780 of the Code of 1851 and its subsequent

re-enactments, prior to the enactment of sections 775 and 776 of the Code of 1897, the builders of telegraph and telephone lines could rightfully erect their poles and string their wires on every street and alley in each and all of the cities and towns of the state, without regard to the wishes of the several municipalities; but we are satisfied that such power, if it existed, was materially narrowed by the later Code provisions to which we have made reference. The authority given by section 780 of the Code of 1851 and subsequent re-enactments thereof prescribe undoubtedly the general rule; but it is a rule from the operation of which cities and towns have been excepted or removed by the later legislation embodied in sections 775 and 776 of the present Code.

By the first of these, cities and towns are empowered to "authorize" the use of their streets for such purposes, and by the second the grant of such franchise is made subject to the ratification of the voters of the municipality. To say now that, notwithstanding this statute, the streets of such municipality are open to the entrance of every person or corporation which may be minded to try its hand at the maintenance of a telephone system, without permission of the constituted authorities or the approval of the voters is to nullify the legislative enactment. On the other hand, by treating Code, section 2158, as stating a general rule, which must be read and applied with due reference to limitations imposed by other statutes relating to the same subject all may be given due effect.

The case of *Chamberlain v. Telephone Co.,* 119 Iowa, 619, on which appellants place much reliance is not here a controlling authority. The telephone line or system there in controversy had been erected, and the rights of the company had vested, under a general statute substantially identical with the present Code, section 2158. This was, however, prior to the enactment found in Code, sections 775 and 776, and the effect of these provisions and the

authority and power thereby vested in cities and towns was in no manner discussed or considered. The one thing there considered was the construction of the general statute, authorizing persons and corporations to erect telegraph and telephone lines on all the public highways of the state; and it was held that the words "public highways" necessarily included city streets, and that the telephone company's rights therein were therefore not referable to any grant or franchise from the city. With the correctness of that decision upon the issue as there made, we have here no quarrel. What we hold is that the Legislature, having now expressly clothed the cities and towns of the state with power to authorize the use of its streets for such purposes, or, in other words, to grant franchises to telephone companies, and having further made ·the validity of such grants dependent upon their ratification by popular vote, it follows of necessity that a city or town, acting through its constituted authorities, may exclude from its streets the poles and wires of any company or system to which such permission has not been extended. It will not do to say that the extent of the authority given to cities and towns is merely to regulate, and not to authorize or prohibit; for, while it might be possible to torture that meaning out of Code, section 775, if it stood alone, it would leave the succeeding section utterly pointless and of no effect.

It is to be conceded that cases may be found, and they are cited by counsel, in which statutes, more or less similar to our own, have been shorn of their apparent effect, and construed as giving cities and towns no more than a power of supervision or regulation. The thought which seems to have influenced these holdings, and is pressed upon our attention in appellant's brief, is that, where the state—the repository of the sovereign power—has by general statute given telephone and other similar corporations the right to occupy the public highways with their poles and wires, it can not be presumed that the Legis-

lature intended to confer upon cities and towns the right or power to exclude them from their corporate limits.

We do not regard the reasoning by which this conclusion is reached as convincing or persuasive. It is a safe rule to assume that the Legislature means what it clearly says. The state may and does delegate certain of its powers to municipal corporations, and if, in its judgment, such corporations can best or most effectually control, improve, and protect the streets within their limits, and statutes to that effect are duly enacted, we know of no restriction in the Constitution or in principles of public policy which should impel the courts to construe away their obvious meaning. It was entirely competent for the Legislature to restrict the scope of the right or privilege which had been conferred by Code, section 2158, and this we think it did by the provisions of the later statute.

As we read the Code provisions to which we have adverted, they clearly contemplate that a grant or franchise from the city or town and its ratification by vote of the electors are conditions precedent to the right of any person or corporation to occupy the streets of such municipality with a telephone system. These conditions have not been met by the appellants, or either of them, and the trial court did not err in so holding. We think, too, that some weight should be allowed to the practical construction which has been placed upon the statute.

It is a matter of common observation that public utility corporations have quite universally accorded to the statute the effect which we here give to it; since it became the law of the state, they have sought and obtained entrance into the cities and towns of the state only by the method and under the restrictions imposed by Code, sections 775 and 776. Such was the intervener's own conception of its rights when it sent its agents to Washta to secure the passage of ordinance No. 33. The view thus indicated we hold to be the correct one. The opposite conclusion would

come as a surprise, not only to the profession and to the cities and towns of the state, but to the promoters and proprietors of telephone enterprises themselves, and result in an unfortunate increase of confusion and disharmony.

Other questions argued by counsel are rendered immaterial in view of our holdings upon the points already discussed. For the reasons stated, the decree of the district court is—*Affirmed.*

McCLAIN, J. (dissenting).—On one very material point I am unable to agree with the views expressed by the majority in this case. When the cases of *Chamberlain v. Iowa Telephone Co.,* 119 Iowa, 619, and *State v. Nebraska Telephone Co.,* 127 Iowa, 194, were decided, the statutory provisions in reference to the use of streets and roads by telephone companies were the same as they are now, and I fail to find in those cases any intimation that Code, sections 775 and 776, constituted a limitation on the powers of such companies as to the streets. As these sections of the Code are not set out in the majority opinion, I insert them here:

775.  Cities and towns shall have the power to authorize and regulate telegraph, district telegraph, telephone, street railway and other electric wires, and the poles and other supports thereof, by general and uniform regulation, and to provide the manner in which, and places where, the same shall be placed upon, along or under the streets, roads, avenues, alleys, and public places of such city or town, and may divide the city into districts for that purpose.

776.  No franchise shall be granted, renewed, or extended by any city or town for the use of its streets, highways, avenues, alleys or public places, for any of the purposes named in the preceding section, unless a majority of the legal electors voting thereon vote in favor of the same at a general or special election.

It seems to me plain that section 775 was intended only to authorize cities and towns to regulate the manner in

which and places where the lines of telephone companies should be constructed through the streets. It is to be noticed that section 775 also relates to street railway and other electric wires, not authorized in the street by any general statute of the state, while telegraph and telephone companies are expressly authorized by the general statute, which, as construed in the two cases just cited, was applicable to streets, as well as to roads. Code, section 775, therefore applies in a general way to some lines of electric wires authorized to be constructed by general state statute and other lines not so authorized to be constructed; and it seems to me that, as to the lines authorized to be constructed under the general law of the state, this section amounts only to a grant of power to regulate. In view of this fact, Code, section 776, should be construed only as applicable to such lines of electric wires as could not be erected in the streets, save in pursuance of express authority from the city council. Even as to telegraph and telephone lines, a franchise might well be important, and if the council attempts to grant such a franchise it can do so only under the provision of section 776; but I can not read into the sections any intention to repeal the general law relating to the construction of such lines in "roads;" that term necessarily including streets. That such a limitation or repeal is not necessarily implied, and should not be read into the statute, is supported by a great number of cases so directly in point that I need only say with reference to them that they are distinctly contrary to the conclusion which the majority has reached. Among these cases are the following: *Wichita v. Old Colony Trust Co.,* 132 Fed. 641 (66 C. C. A. 19); *Northwestern Telephone Ex. Co. v. Minneapolis,* 81 Minn. 140 (83 N. W. 527, 86 N. W. 69, 53 L. R. A. 175); *Wisconsin Telephone Co. v. Oshkosh,* 62 Wis. 32 (21 N. W. 828); *Texarkana v. Southwestern T. & T. Co.,* 48 Tex. Civ. App. 16 (106 S. W. 915); *New Hope Telephone Co. v. Concordia,* 81 Kan. 514 (106

Pac. 35); *State ex rel. v. Red Lodge,* 30 Mont. 338 (76
Pac. 758); *State ex rel. v. Sheboygan,* 111 Wis. 23 (86 N.
W. 657); *State ex rel. v. Milwaukee,* 132 Wis. 615 (113
N. W. 40); *Michigan Telephone Co. v. Benton Harbor,*
121 Mich. 512 (80 N. W. 386, 47 L. R. A. 104); *American
Union Telephone Co. v. Harrison,* 31 N. J. Eq. 627;
*Summit v. N. Y. & N. J. Telephone Co.,* 57 N. J. Eq.
123 (41 Atl. 146); *In re Johnston,* 137 Cal. 115 (69 Pac.
973); *Carthage v. Central New York Telephone Co.,* 185
N. Y. 448 (78 N. E. 165, 113 Am. St. Rep. 932). Quotations might be made from these cases, showing that the
courts deciding them had for consideration the very question here presented; but I refrain from amplifying this dissenting opinion, deeming it sufficient to call attention to the
construction which I think should be given to our statutory
provisions in accordance with the practically uniform current of authority in other states, and, as I think, in exact
conformity with the views entertained by this court in
deciding the two cases referred to.