GEORGE E. TALMAGE, Appellant, v. TOWN OF WASHTA et al., Appellees.

**TELEGRAPHS AND TELEPHONES:** Ordinance Authorization of Toll Lines. Telephone toll lines—those operating solely between the cities and towns of the state—require no ordinance authorization as a condition precedent to the right to occupy streets and alleys. (See Secs. 776, 2158, Code, 1897.)

*Appeal from Cherokee District Court.*—WILLIAM HUTCHINSON, Judge.

MAY 17, 1918.

THE opinion states the case.—*Reversed and remanded*.

*J. D. F. Smith,* for appellant.

*Herrick & Herrick,* for appellees.

WEAVER, J.—The plaintiff's petition in equity states his case substantially as follows: He is the owner of a telephone toll line, extending from a point within the town of Washta to the neighboring towns of Quimby, Holstein, Aurelia, and Fielding. He does not own or operate, or ask to be permitted to own or operate, a local telephone exchange in Washta, but uses and proposes to use such line solely as a means of communication between his office or toll station and the other towns with which his line is connected, as above stated. He alleges, however, that the defendants, Town of Washta and its mayor and council, deny his right to have or maintain such line within the corporate limits, and have cut down his poles and rolled up his wires, and rendered his line of no use or avail for its intended purpose.

He further avers that the telephone line, as constructed by him, was erected with care, and that no objection is raised thereto by reason of any defect or fault in its construction or use, but that defendants claim the absolute right to forbid and prevent the maintenance of such line within the town. He alleges that the mayor of the town is, himself, the president of a local telephone company, which owns and operates a local exchange therein, under a franchise granted for that purpose; and that defendants assert that such franchise is exclusive, and because thereof no toll line can be permitted to enter the town or maintain a toll station therein. Plaintiff avers his willingness to comply with all reasonable rules and regulations which may be imposed upon him with reference to the construction and maintenance of his toll line and station, and he asks that his right to maintain the same may be judicially declared and confirmed, and that defendants be enjoined from interfering with his exercise of such right.

To this petition, the defendant interposed a general demurrer. This being sustained, plaintiff elected to stand upon his pleading without amendment. Judgment was thereupon entered, dismissing the petition, and plaintiff appeals.

The telephone, as a public convenience, serves two quite distinct uses. In one, it competes with the telegraph, extending its lines from town to town and city to city, affording means of quick communication between persons separated by very considerable distances. In the other, it provides networks of numerous lines of a purely local character, extending from a central station in each city to the homes, offices, shops, and business places therein. In performing services of the first kind, its success and efficiency depend primarily upon its right and opportunity to overcome the handicap of mere distance, and to provide a means of communication between more or less widely separated cities and towns. Each place so served is, in a sense, a mere way or relay station,

and its connection is effected by a single wire, or, at most, very few wires, which enter and leave town by the most direct course. They cast but a slightly increased burden upon the streets of the town, and add but little to its burden of police supervision. On the other hand, the ordinary telephone exchange is, generally speaking, a purely local concern. From its central office, its tentacles reach out into nearly every building or place within the corporate limits, where people live or labor or transact business. Its poles crowd the streets and its web of wires fill the air until the proper regulation of its business and the maintenance of its system without undue interference with the ordinary use of the streets and public places for other legitimate purposes present a very serious problem for the consideration of the municipalities where they are established. That the city or town which is asked to grant a franchise for a business making such great demand upon its streets and public ways, and proposing to perform a public service of such universal convenience and importance to the people, should be given power or choice in selecting the person or party to whom the authority shall be given, and to prescribe the reasonable conditions of such grant, is too just and proper to admit of discussion; and it was doubtless with this thought that the legislature enacted Section 776 of the Code of 1897. This statute, as the same has been construed by the courts, clothes cities and towns with the authority to grant or refuse to grant franchises for the use of its streets and public places for telephone purposes, and to prescribe regulations for the exercise of such franchise rights. *Farmers Tel. Co. v. Town of Washta,* 157 Iowa 447. But it has been settled, in several cases, that this requirement does not affect the rights of telephone companies in cities and towns where their business was established prior to the enactment of the Code of 1897. *Chamberlain v. Iowa Tel. Co.,* 119 Iowa 619; *State ex rel. Shaver v. Iowa Tel Co.,* 175 Iowa 607. This distinction

has been drawn on the theory that, prior to the enactment of the Code, the general right of telephone companies to occupy the streets had been conferred by the provision now embraced in Code Section 2158. The chapter in which this section is found was originally enacted with sole reference to telegraph companies and telegraph lines. The first section (now Code Section 2158) granted, in general terms, a right of way for telegraph lines "along the public roads of the state, or across the rivers or over any lands belonging to the state or any private individual," and prescribed rules for the prompt and speedy transmission of messages, and penalties for neglect or willful failure in performance of their duties. Years later, when the telephone came into existence, and had demonstrated its usefulness in the performance of services of a similar character, the statute just referred to was amended by inserting the words "or telephone" immediately after the word "telegraph" wherever it occurred in the original text of the chapter, thus giving to the two methods of communicating intelligence by wire and transacting such business for the accommodation of the public, identical standing before the law.

It is the opinion of the writer (who, in this respect, speaks here for himself alone) that, in thus amending the telegraph statute to admit the telephone to the same general rights, and to charge its use with the same duties and liabilities, the legislature had no thought that it was granting to telephone companies generally a universal franchise to establish and maintain local exchanges, but rather, that it was placing the telephone on equality with the telegraph in the use of the public roads as a right of way, by which to extend its lines from town to town and from place to place, and thus enable it to carry on a business which, up to that time, had been the special function and privilege of the telegraph. The adoption of this view by my colleagues is not necessary, however, to the result we have reached upon

this appeal; but it serves to confirm my own judgment in the correctness of that conclusion, and I express it for whatever it may be worth.

We are agreed upon the proposition that the statute, as it stood when it related to the telegraph alone, did not require the granting of a municipal franchise as a condition precedent to the construction of such a line into and through any city or town, or to the maintenance therein of an office for the transaction of its business with the public. If this be correct, it is very clear that the amended statute, which simply coupled the telephone with the telegraph, without other change therein, cannot be said to subject either the telegraph company or telephone company to such necessity.

It only remains to inquire whether the situation is so affected by the enactment of Code Section 776 that the appellant must secure a franchise from the appellee town before he can lawfully erect a toll line therein. In our judgment, this inquiry must be answered in the negative. The general question was somewhat vaguely suggested in the opinion of this court in *Farmers Tel. Co. v. Town of Washta,* supra, but left undecided. It was again mentioned by Justice Deemer in *State ex rel. Shaver v. Iowa Tel Co.,* supra, but again was passed without answer, as being unnecessary to the disposition of that case. The language used by the learned writer of that opinion is as follows:

"There may be some doubt, in construing Sections 775, 776, and 2158 together, whether cities and towns may now regulate toll lines within their limits. It may be that the state still retains its right to do this, under Section 2158. Perhaps no grant from the city is necessary to obtain the right to erect a toll line within the limits of the city; and it may be that, after obtaining a grant from the state, the city may still regulate the placing of the poles, wires, etc., for toll lines within its limits, by general and uniform regulations applying to all toll lines alike. Upon this and

other propositions, we express no opinion, as it is not necessary to a decision of the case."

Viewing the question, then, as still an open one, we are led to the conclusion that, whether the legislature, in enacting Code Sections 2158 to 2164, did or did not have in mind the differentiation between the telephone as a competitor with the telegraph for linking widely separated cities and towns by wire, and the telephone system as it exists in the localized service of an individual city or town, we are satisfied that, in enacting Section 776, the distinction was recognized, and that the requirement of a franchise from the municipality was intended to apply only to the right to establish and carry on the localized business which is ordinarily accomplished through a central office or exchange. It is this business, as we have already noted, which necessitates the multitude of poles and wires, calling most insistently for police supervision and regulation, and presenting many other features rendering its control and direct responsibility to the local authorities a matter of material importance to the local public. In other words, we think that, in the absence of any expressed or necessarily implied legislative intent to the contrary, the right to maintain a telephone toll line or telegraph line into or through a city or town, thus affording connection with other places and centers of population beyond the confines of the local jurisdiction, is provided for by the Code chapter on telegraphs and telephones, and that the exercise of the right so given is not conditioned upon the procurement of a franchise from each municipality into which or through which the line is extended. The reasons for making the establishment and operation of a local exchange subject to the consent of the city or town, as well as to a large measure of municipal regulation, have little, if any, application to toll lines. A local system or exchange, the primary purpose of which is to supply the needs of the local population for intercommunication, is, or should be,

recognized as a natural monopoly. That is, a single system, properly regulated and administered, will serve the convenience of any given city or town better and more effectively than two or more systems, covering the same territory and competing for the favor of the same clientage; but, were it not for Code Section 776, placing control of franchises of this character in the several cities and towns, these municipalities would be powerless to protect themselves against such conditions, and it would be legally possible for all their streets, alleys, and public places to be crowded and burdened with the lines of warring rivals. Such inconvenience cannot well result from competition between toll lines; and, if competition or rivalry does arise between them, there is no apparent reason for giving to any city or town the right to throw the weight of its authority into the scale for the advantage of either competitor. Code Section 776, to which we have referred, provides that no franchise shall be granted for the occupation of the streets, highways, avenues, alleys, or public places of any city or town, for the use of telephones or other public utilities, except upon public consent, expressed by a vote of the people; and, while it does not, in express terms, draw the distinction we have made, between telephone toll lines and local systems of telephone exchange, we are of the opinion that such distinction is fairly implied. Such construction gives effect both to Code Section 2158 and to Section 776. Upon any other theory, it would be difficult to sustain one without, in some measure, abrogating the other.

It follows that the demurrer to plaintiff's petition should have been overruled. In so holding, it is proper to here say that this decision is not to be construed as in any sense a denial of the authority of the town, under Code Section 775, to prescribe reasonable rules and regulations under which the plaintiff may construct and maintain his tol!

line.  That authority seems to be clearly contemplated by the statute.

The judgment below is reversed, and cause remanded, with instructions to the trial court to overrule the demurrer, and for such further proceedings as may be in harmony with the views herein expressed.—*Reversed and remanded.*

Preston, C. J., Gaynor and Stevens, JJ., concur.