CITY OF CHEROKEE et al., Appellees, v. NORTHWESTERN BELL
TELEPHONE COMPANY, Appellant.

**TELEGRAPHS AND TELEPHONES:** Rights in Municipal Highways
—When Municipal Franchise Required. The pre-eminent right of a
*toll or long-distance* telephone company to use the highways of a city
or town without a local municipal franchise (Sec. 8300, Code of 1924)
will not enable such a company, after acquiring the property of a
local telephone exchange, to maintain such local exchange without a
local municipal franchise (Secs. 5904, 5905, Code of 1924), even
though it so improves the local exchange that every local phone is
not only a local station but also a *toll or long-distance station.*

Headnote 1:   37 Cyc. p. 1617.

*Appeal from Cherokee District Court.*—WILLIAM HUTCHINSON,
Judge.

MARCH 17, 1925.

ACTION to enjoin a telephone company from occupying the streets and alleys of the plaintiff city with its poles, wires, and other apparatus, for the purpose of carrying on a telephone business. The court granted the relief prayed by the plaintiff, and the defendant appeals.—*Affirmed.*

*W. K. Herrick, F. E. Randall,* and *Parrish, Cohen, Guthrie & Watters,* for appellant.

*J. F. Loughlin* and *A. R. Molyneux,* for appellees.

FAVILLE, C. J.—I. About 1884, a telephone line was constructed from Storm Lake to Sioux City, passing through the city of Cherokee, and occupying the streets and alleys of said city for said purpose. A toll station was established in Cherokee, and the line was used solely as a toll line, for the transmission of long-distance messages. Appellant was organized under the name of the Iowa Telephone Company, about 1896, and in September of that year acquired the telephone line between Storm Lake and Sioux City, and has used the same ever since as a toll or long-distance line. About 1895, the first local telephone exchange was located in the city of Cherokee. It appears that the original company which constructed the local telephone exchange was succeeded by another company, and it in turn by a company known as the New State Telephone Company. It also appears that a franchise was granted to said local exchange for the use of the streets and alleys of appellee city for a period of twenty years, and that said franchise expired in August, 1921. In the early part of 1917, appellant abandoned the use of the telephone station which it had maintained in the city of Cherokee, and connected its long-distance lines with the local-exchange system; and on January 1, 1920, appellant acquired all of the property of the local-exchange system in appellee city, and thereafter operated both the local and toll systems through one office, and, in effect, as one complete system. The record is silent as to whether or not appellant acquired the franchise of the local exchange company at the time it purchased its physical property; but, in any event, the said franchise expired in

August, 1921.  Thereafter, appellant continued to operate the local exchange and the long-distance system in said city, without securing any new franchise.  This action is brought to enjoin appellant from using the streets and alleys of said city for the maintenance of the said local-exchange system.

It is conceded by appellee city that appellant has the right to occupy the streets and alleys of appellee city for the purpose of carrying its long-distance or toll lines through said city.  It appears without dispute in the evidence that, by the combination of the toll or long-distance system with the local-exchange system, both are operated through one office and by a common switchboard; and that every patron of the local exchange, from his residence or place of business, can be connected for telephonic communication, not only with any other telephone connected with the local exchange, but also, through the same switchboard and by the same operator, with outside points at long distance.  In fact, it is apparent from the record that so adequate, extensive, and universal is telephonic connection throughout the entire country, that a patron of the local exchange in appellee city can, from his residence or place of business, be connected, through the switchboard of appellant company, with any individual phone in practically any town or city in the United States.

The main contention of appellant may be briefly stated as follows:  That it acquired a legal right by legislative grant to occupy the streets and alleys of appellee city for the purpose of carrying its long-distance or toll lines through said city; and that, when it acquired the local exchange in appellee city, its method of operation by the connection of the local telephones, through the switchboard, with long-distance or toll lines, was a mere extension, or multiplication, of its toll system.  To put it another way, it is the contention of appellant that it in fact maintains a long-distance service for every one of its patrons in appellee city, and that every telephone in a residence or business place becomes, as a matter of fact, a long-distance station; because through it the patron has access to long-distance service, and at greater convenience than would be secured by the maintenance of a single toll or long-distance station.

A consideration of this question requires a review of the

statutes of the state, and of our holdings in construing the same. Section 780 of the Code of 1851 provided that:

"Any person or company. may construct a telegraph line along the public highways of this state."

This provision of the statute was carried into the Code of 1873 as Section 1324 thereof.

In 1882, the nineteenth general assembly amended said section by inserting therein the word "telephone," thus granting to telephone, as well as telegraph, companies the right to construct their lines along the public highways of the state (Chapter 104 of the Acts of the Nineteenth General Assembly). No change was made in the law in respect to said matter until the adoption of the Code of 1897, and Sections 775 and 776 were then inserted in the Code. Said Section 1324 of the Code of 1873 was incorporated into the Code of 1897 as Section 2158.

It is, of course, a matter of common knowledge that, at the time of the adoption of the Code of 1851, the telephone had not been invented; and the legislation then enacted had solely to do with telegraph lines, which extended from one city or town to another; and the means of communication was wholly of the character that is now commonly known as "long distance." With the advent of the telephone, it was originally operated in the same manner as the telegraph. The local exchange, with the multiplication of telephone service to practically every residence and business place of towns and cities, had not yet come into vogue; and, at the time of the amendment of the statute by the nineteenth general assembly, the telephone was used almost exclusively in the same general manner that the telegraph was used,—as a means of long-distance communication. However, by the time of the adoption of the Code of 1897, the use of the telephone by the means of the local exchange and its multiplicity of service, had become quite general and universal.

The history of the development and growth of the art makes it quite apparent that the legislature of the state, in enacting these different statutes, has dealt with two different and distinct situations. At the time of the adoption of the act of the nineteenth general assembly permitting the use of the public highways of the state for the construction of telephone lines, the legislature dealt with a situation where practically the only tele-

phone lines then existing were interurban; and local exchanges in cities and towns of this state were practically unknown. The legislature dealt with telephone lines, under this situation, exactly as it dealt with telegraph lines, and authorized the use of the public highways of the state for the purpose of construction of such lines as then existed, and as were then in use in connection with both telegraph and telephone service.

In 1897, at the time of the adoption of the Code, there had been an unusual and extraordinary development in the art of telephonic communication. Local exchanges were springing up in the various cities and towns of the state, and communication by telephone was no longer limited to long-distance communications between different towns and cities, but was then beginning, by means of the local exchange, to necessitate a greatly extended use of the streets and alleys of the cities and towns of the state.

In adopting the Code of 1897, the legislature recognized this apparent situation, and was cognizant of the fact that telephone companies were operating in a dual capacity.

The original plan of long-distance lines extending between cities and towns was still in vogue. Additional lines of this character were being built, and would be erected in the future. Local exchanges, requiring a greatly extended use of the streets and alleys of cities and towns, were developing. The legislature clearly intended to provide for both systems,—the long-distance or interurban system, and the local-exchange system; and hence it incorporated in the Code of 1897, Section 2158, as previously existing, providing that the streets and alleys of cities and towns could be used as originally authorized, for long-distance or toll lines, and also providing, by Sections 775 and 776, that a franchise must be secured for the general use of the streets and alleys of cities and towns for local-exchange purposes.

Appellant contends that the foregoing is too broad and liberal a construction to place upon the statutes in question, and that the legislature did not, in terms or by fair intendment, so provide.

These statutes must be construed in the light of existing conditions, to ascertain the true purpose and intention of the legislature in their enactment.

In *Chamberlain v. Iowa Tel. Co.*, 119 Iowa 619, we held

that, under the general legislative grant to use the public highways of the state, a telephone company had the right to occupy the streets and alleys of a city or town, without express grant from the municipality. In other words, it was held that the words "public highways" in said Section 1324 of the Code of 1873, included streets and alleys of cities and incorporated towns. The question as to the proper construction to be given Section 2158 of the Code of 1897 (Section 1324 of the Code of 1873) and Sections 775 and 776 of the Code of 1897, has been referred to a number of times in the opinions of this court. See *East Boyer Tel. Co. v. Town of Vail*, 166 Iowa 226; *State ex rel. Larimer v. Chariton Tel. Co.*, 173 Iowa 497; *State ex rel. Shaver v. Iowa Tel. Co.*, 175 Iowa 607; *City of Des Moines v. Iowa Tel. Co.*, 181 Iowa 1282.

As early as *Farmers Tel. Co. v. Town of Washta*, 157 Iowa 447, we said:

"The authority given by Section 780 of the Code of 1851 and subsequent re-enactments thereof prescribe undoubtedly the general rule; but it is a rule from the operation of which cities and towns have been excepted or removed by the later legislation embodied in Sections 775 and 776 of the present Code. By the first of these, cities and towns are empowered to 'authorize' the use of their streets for such purposes; and by the second, the grant of such franchise is made subject to the ratification of the voters of the municipality. To say now that, notwithstanding this statute, the streets of such municipality are open to the entrance of every person or corporation which may be minded to try its hand at the maintenance of a telephone system, without permission of the constituted authorities or the approval of the voters, is to nullify the legislative enactment. On the other hand, by treating Code Section 2158 as stating a general rule, which must be read and applied with due reference to limitations imposed by other statutes relating to the same subject, all may be given due effect."

Finally, in 1918, in *Talmage v. Town of Washta*, 183 Iowa 792, we said:

"The telephone, as a public convenience, serves two quite distinct uses. In one, it competes with the telegraph, extending its lines from town to town and city to city, affording means

of quick communication between persons separated by very considerable distances. In the other, it provides networks of numerous lines of a purely local character, extending from a central station in each city to the homes, offices, shops, and business places therein. In performing services of the first kind, its success and efficiency depend primarily upon its right and opportunity to overcome the handicap of mere distance, and to provide a means of communication between more or less widely separated cities and towns. Each place so served is, in a sense, a mere way or relay station, and its connection is effected by a single wire, or, at most, very few wires, which enter and leave town by the most direct course. They cast but a slightly increased burden upon the streets of the town, and add but little to its burden of police supervision. On the other hand, the ordinary telephone exchange is, generally speaking, a purely local concern. From its central office, its tentacles reach out into nearly every building or place within the corporate limits, where people live or labor or transact business. Its poles crowd the streets and its web of wires fill the air until the proper regulation of its business and the maintenance of its system without undue interference with the ordinary use of the streets and public places for other legitimate purposes present a very serious problem for the consideration of the municipalities where they are established.''

We also said:

''Viewing the question, then, as still an open one, we are led to the conclusion that, whether the legislature, in enacting Code Sections 2158 to 2164, did or did not have in mind the differentiation between the telephone as a competitor with the telegraph for linking widely separated cities and towns by wire, and the telephone system as it exists in the localized service of an individual city or town, we are satisfied that, in enacting Section 776, the distinction was recognized, and that the requirement of a franchise from the municipality was intended to apply only to the right to establish and carry on the localized business which is ordinarily accomplished through a central office or exchange. It is this business, as we have already noted, which necessitates the multitude of poles and wires, calling most insistently for police supervision and regulation, and presenting many other

features rendering its control and direct responsibility to the local authorities a matter of material importance to the local public. In other words, we think that, in the absence of any expressed or necessarily implied legislative intent to the contrary, the right to maintain a telephone toll line or telegraph line into or through a city or town, thus affording connection with other places and centers of population beyond the confines of the local jurisdiction, is provided for by the Code chapter on telegraphs and telephones, and that the exercise of the right so given is not conditioned upon the procurement of a franchise from each municipality into which or through which the line is extended. The reasons for making the establishment and operation of a local exchange subject to the consent of the city or town, as well as to a large measure of municipal regulation, have little, if any, application to toll lines."

We are asked to overrule the *Talmage* case. This we are not disposed to do.

Appellant argues that it obtained the right to occupy the streets of the city of Cherokee under the legislative grant given it by Section 1324 of the Code of 1873, as construed by this court in the *Chamberlain* case, supra. It must be conceded that it did acquire such right to occupy the streets of Cherokee under said statute with its toll line as originally constructed, and for the purpose of conducting a toll or long-distance business, as originally contemplated.

It is not disputed by appellee that appellant still has the right, under the general statute, to pass through appellee city with its toll or long-distance lines, and to occupy the streets of appellee necessary for said purpose.

Appellant contends that, if it can occupy one street in appellee city with its line under the legislative grant, it can occupy any and all streets of the city for the purpose of furnishing its patrons efficient long-distance or toll service; and argues that, if it can lawfully maintain one station in appellee city for long-distance service, it can maintain as many stations as it may choose for said purpose, and use and occupy the streets of the appellee city at will for said purpose, subject only to proper police regulations. Appellant contends that the multiplication

of telephones into practically all of the residences and business places of appellee city is merely duplicating its long-distance station and carrying it to each customer, greatly to the convenience of the latter. The argument of appellant is ingenious, and not without plausibility and persuasive force. Were the case one of first impression, it would have great weight with some of the members of this court. But, as previously pointed out, we are committed to a construction of the statutes of the state on this question; and our pronouncement has stood through several sessions of the general assembly and a period of recodification of the laws of the state, without substantial change. The legislature has apparently acquiesced in the interpretation previously placed upon said statutes by this court. It is a matter of common knowledge that the cities and incorporated towns and the telephone companies operating in this state have likewise acted for many years in the granting of franchises and otherwise, in accordance with the construction heretofore placed by us upon said statutes.

To sustain appellant's contention now would be to practically repeal Sections 775 and 776 of the Code of 1897, by judicial construction, except so far as a right of police regulation is embraced therein. The construction contended for by appellant would give a telephone company the undoubted right, without obtaining any franchise or grant from a local municipality, to enter upon the streets of such municipality for the avowed purpose of carrying a long-distance line through the city or town, and then, having done so under the general legislative grant, proceed to occupy any or all of the streets and alleys of the municipality with numerous  poles and wires, under the claim that it had the right so to do because by this means it was merely carrying its long-distance system to each of its customers. By such a method, no telephone company would find itself confronted with any necessity of obtaining a franchise to conduct a telephone exchange in any town or city of the state. Every local exchange would be instantly metamorphosed into a mere "long-distance system," with every telephone converted into a "toll station," and the business of the local exchange claimed by the telephone company to be merely incidental to this widely diversified long-distance business.

These considerations are not determinative of appellant's legal rights; but they are worthy of consideration in deciding the question as to whether we should now overrule our former decisions and place a construction upon the statutes that would practically abrogate the provisions regarding the securing of a franchise to operate a telephone exchange in a city or town of this state.

We are not disposed to recede from our former decisions. The case is controlled by the rule of *stare decisis*. We reaffirm our construction of the statutes, as providing that, under the general legislative grant, a telephone company may carry a long-distance or toll line through a city or town and occupy the necessary street or streets for such purpose, without obtaining a franchise from the municipality; but that a telephone company cannot maintain a local exchange for the interchange of messages between the inhabitants of a city or town and use the streets and alleys of such city or town without first obtaining a franchise so to do.

II.   Appellant contends that, under the general legislative grant, it had a contract with appellee city which could not be abrogated without depriving appellant of its property without due process of law, contrary to the provisions of Section 1 of the Fourteenth Amendment to .the Constitution of the United States.

As we construe the statutes, there has been no abridgement of the right given appellant under the general legislative grant, and hence no invasion of constitutional rights.

The decree of the trial court will be in all respects affirmed, with this modification: that the injunction and writ of ouster therein provided for shall not become operative for a period of six months from the date of the filing of this opinion, and shall be suspended during said period of time.

It is so ordered.—*Affirmed.*

EVANS, STEVENS, ARTHUR, DE GRAFF, and VERMILION, JJ., concur.

ALBERT, J., dissents.