STATE OF IOWA, ex rel., H. G. LARIMER et al., Appellant, v. CHARITON TELEPHONE COMPANY, Appellee.

**ESTOPPEL:** Equitable Estoppel—Void Act as Basis. That which
1 is wholly void and without legal effect cannot be made the basis of an estoppel.

**TELEGRAPHS AND TELEPHONES:** Franchise—Void Ordinance—
2 Valid State Statute—Estoppel. A telephone company which, prior to the taking effect of the Code of 1897 (Oct. 1, 1897), erected and operated its telephone equipment upon and along the streets of a city, is not estopped to claim that its right to so do is referable to the state statutes then existing (Sec. 1324, Code, 1873, as amended by Ch. 104, 19 G. A.), by the fact that, in the original construction of such equipment, it accepted the terms of an *invalid* city ordinance, which assumed to grant to it the right and power to so construct its line.

WEAVER and PRESTON, JJ., dissent.

*Appeal from Lucas District Court.*—F. M. HUNTER, Judge.

TUESDAY, JANUARY 18, 1916.

ACTION to oust the defendant company and its poles and wires from the streets, alleys and public places of the city of Chariton. The demurrer of the defendant to the petition was sustained. Plaintiff elected to stand upon the petition, and judgment was entered against the plaintiff. Plaintiff appeals.—*Affirmed.*

*Storie & Kridelbaugh,* for appellant.

*J. A. Penwick* and *Parker, Parrish & Miller,* for appellee.

DEEMER, J.—This case was submitted with *State of Iowa ex rel. Shaver v. Iowa Telephone Company,* 175 Iowa .. (Apr. 7, 1916). The issues are substantially the same as in that case, except that plaintiff relies upon an ordinance of the city of Chariton, and the defendant does not rely upon laches and one or two other defenses interposed in the other case.

1. ESTOPPEL: equitable estoppel: void act as basis.

Chariton is an incorporated city of the second class; and, in 1894, passed an ordinance granting to the defendant company the right to erect, maintain and use poles in the streets of the city for telephone purposes, upon certain conditions, for the period of 15 years. The 15 years expired in 1909. After the passage of the ordinance, the company did construct a telephone exchange within the city and upon its streets and alleys, and has continued to operate the same and occupy the streets and alleys with its poles and wires ever since.

The demurrer of the defendant was on the following grounds:

The ordinance is invalid because of a want of power in the city of Chariton to enact said ordinance or grant the franchise which it purports to contain because, prior to the Code of 1897, the power to grant such franchises or rights rested solely in the state. That when defendant constructed its telephone system in Chariton, there was in force Section 1324 of the Code of 1873, as amended by Chapter 104 of the Acts of the Nineteenth General Assembly, and that defendant's lines were constructed under the grants contained in said section, and the legislature has never granted the city of Chariton any power to cancel or terminate said grant. That the construction and subsequent operation of its telephone lines by defendant were an acceptance of the grant contained in the statute, and constituted a contract between defendant and the state of Iowa, which the state has never attempted to rescind.

That, by accepting the grant under the statute aforesaid, the defendant acquired the right in perpetuity to maintain its poles and wires upon the streets of Chariton, subject only to the exercise of the police power, and that such right in perpetuity is protected by the Constitution of the United States, which provides that no state shall enact any law impairing the obligations of a contract, which right the defendant sets up and relies upon.

The points relied upon by plaintiff (appellant) are that, the legislature having defined the word "highway", the court is bound by that definition and cannot construe the word otherwise. That the defendant company never had the right to construct its exchange upon the streets of Chariton, prior to the ordinance granting such right in 1894. That the city of Chariton had the power to grant a license to the telephone company, and such was the effect of the ordinance passed in 1894. That, if the telephone company was given a grant by the statute relied upon, it took the same subject to Code Section now 1619, as enacted in the Code of 1873, and new conditions have been imposed upon the enjoyment of the same by Sections 775 and 776, Code, which conditions the telephone company has failed to comply with.

The plaintiff (appellant) contends that the court arrived at the wrong conclusion in *Chamberlain v. Iowa Tel. Co.*, 119 Iowa 619, in construing "highways" in the statute to include streets and alleys; and this is one of the reasons why it contends that the defendant is not entitled to occupy the streets. Another contention, as already stated, is that new conditions have been imposed upon the enjoyment of the right, by Sections 775 and 776 of the Code of 1897.

We do not consider it necessary to pass upon the question as to the effect of the ordinance; the defendant company does not claim any right under it. It should be said, perhaps, that a majority of the electors have not voted in favor of any franchise to the defendant company, as provided in Section 776 of the statute.

Every point save one in this case is ruled by *State ex rel. Shaver v. Iowa Telephone Company,* decided at the present sitting of the court adversely to appellant's contention. That one point has reference to the effect of the

**2. TELEGRAPHS AND TELE- PHONES: fran- chise: void ordinance: valid state statute: estoppel.** ordinance granted by the city of Chariton to the Telephone Company and the Telephone Company's acceptance thereof. It is conceded that there was no statutory authority in the city to grant a franchise to the company, and that, at best, the ordinance was nothing more than a police or regulatory measure. It is so fundamental as not to require the citation of authority that a municipality has no power except as expressly granted by the legislature, or such as is necessarily to be inferred from the power granted. It had no power to grant the telephone company a charter in the year 1894, and its act in so doing was *ultra vires* and void. The acceptance of the ordinance by the company did not estop it from claiming under a valid legislative grant by the state; and, even if the act be treated as a license to the defendant to use its streets, all terms of that license have been complied with, and neither party is claiming anything directly there- under. The same point was involved in *Chamberlain v. Iowa Telephone Co.,* 119 Iowa 619, and it was there disregarded as inconsequential. Such is the holding of the cases. See *City of Kenosha v. Kenosha Home Tel. Co.,* (Wis.) 135 N. W. 848; *Western Union Tel. Co. v. City of Visalia,* (Cal.) 87 Pac. 1023; *Farmer v. Columbiana County Tel. Co.,* (Ohio) 74 N. E. 1078; and *Burroughs v. City of Cherokee,* 134 Iowa 429. It is earnestly contended that the *Chamberlain* case, *supra,* is wrong and should be overruled. We have re-examined the matter in the light of the arguments made in this and the *Shaver* case, and are unanimously of opinion that it is correct and should be adhered to. It follows that the judgment must be and is—*Affirmed.*

EVANS, C. J., LADD and GAYNOR, JJ., concur.

WEAVER, J. (Dissenting).—I. For reasons which are sufficiently set forth in my dissent in the recent case of *State ex rel. Shaver v. Iowa Telephone Co.*, I must decline to concur in the foregoing opinion prepared by Justice Deemer.

II. I further dissent because, for reasons hereinafter stated, the correctness of the majority holding in the *Shaver* case may be conceded and the authority of that precedent fully admitted, and yet there remain good and sufficient reasons why it does not apply to or control the decision of the case at bar. Let us assume, for the purposes of the argument, that, under the statute as it stood when the telephone company first proposed to establish a business at Chariton, it had the legal right to enter upon and occupy the streets with its wires and poles and establish and operate an exchange without the city's consent and without asking and receiving a local charter therefor; yet no one will deny that it was under no legal obligation or necessity to claim or exercise all its statutory rights. If it acted as it did in order to cultivate the good will of the people whom it proposed to serve, or if it preferred to accept a compromise, rather than to hold for the full measure of the grant from the state, or if, for any reason, it saw fit to ask and receive a local franchise of an expressly limited character, or, what is still more to the point, if it did not know or understand its superior right until years later, when this court discovered and announced it, it would seem to be beyond fair question in a court of equity that, when such corporation has continued in possession of the streets and in the transaction of its business under the franchise, or form of franchise, so obtained, for the full period of time therein provided for, it would not be heard to say that the act of the city was *ultra vires*, and that it now elects to treat its entrance into the city and its continuance therein as referable only to the statute. It stands conceded that, in the year 1894, the telephone company did apply to the city for and obtain therefrom an ordinance purporting to be the grant of a franchise for its business in that city for a period of fifteen years; and

that, pursuant thereto, it did construct and operate its said telephone system; and that the term of such grant had fully expired when this action was begun. So far as appears from the record, the company never based any claim of franchise on the statute independent of the action of the city until its charter from the latter had expired, and long after the enactment of Code Sections 775 and 776. Those sections were also both in force when the fifteen-year period of the company's local charter terminated. It requires, as properly said in the *Shaver* case, not only the statutory grant, but also an acceptance thereof, to constitute a valid charter. An acceptance implies an intelligent assent of the mind. If a telephone company wishes to show an acceptance of a grant under this statute, it must show the fact that, relying upon the legislative grant, it took possession of the city's streets, and in the same reliance expended its time, labor and money in constructing and operating its system. The showing here made negatives any such acceptance and demonstrates that the defendant, instead of entering upon this venture in reliance upon the statutory grant, acted solely upon the ordinance grant. The one plea made, the sole ground of the demurrer, is that the grant of the ordinance is invalid. That may be admitted, but what difference does it make? The fact that the grant under which it chose to act was invalid makes it none the less clear that it did not so act in reliance upon the statute. Whether the ordinance grant was valid or invalid, there is nothing to indicate that either party thereto ever repudiated it or refused to observe its conditions at any time during the period to which its existence was limited, and now that it has served its purpose, it is, in effect, a contract which has been fully performed and executed, and it is a well settled general rule that, under such conditions, neither will be permitted to raise the plea of *ultra vires*. Since it has been fully performed on both sides, neither party will be heard to say that it got nothing by the deal. But again I suggest, it is wholly immaterial whether the company did or did not get anything

of value by the ordinance franchise.  The material fact is that the company sought and obtained the ordinance, and that act demonstrated that it was not claiming a statutory right superior to the municipal authority and, for that reason, it acquired no franchise except the one (void though it may have been) which it procured from the city.  Having neither claimed nor exercised any right under the statute until long after the law was so changed as to make necessary the procurement of a franchise from the city, it is in no position to demand exemption from that requirement.

Such being my view of the law, I think the decree of the district court should be reversed.  I am authorized by Mr. Justice Preston to say that he joins in this dissent.