CITY OF AUDUBON, Appellant, v. NORTHWESTERN BELL TELEPHONE COMPANY, Appellee.

No. 45955.

AUGUST 11, 1942.

Leonard L. Ryan, of Audubon, for appellant.

Parrish, Guthrie, Colflesh & O'Brien, of Des Moines, and White & Mantz, of Audubon, for appellee.

SAGER, J.— Although this case turns on a question of fact, we find it neither necessary nor desirable to enter into a detailed narration of the testimony. The years that have elapsed since appellee's predecessors in interest ventured into the then new field of the telephone business, have dimmed the recollection of the witnesses upon whom the trial court was compelled to rely.

This doubtless accounts for the seeming contradiction in the testimony of witnesses who could have no motive to falsify. This controversy has its roots nearly half a century back. At that time the telephone business in the territory with which we are concerned was a new and comparatively untried vehicle of communication. The terms "exchange," "system," and "telephone line," had not the definite meaning which they now convey to the public. This, too, may in part account for the differences in the testimony of the witnesses. One may have been testifying that no "telephone exchange" existed in Audubon on October 1, 1897, because of his lack of knowledge of a central plant through which messages are cleared; another may have thought that no "telephone system" existed because the simple beginnings made by Hocker had not attracted public attention; so, too, the few subscribers to the venture in its beginnings may not have appeared to some to have taken on the quality of a "telephone line."

Be that as it may, there was direct and positive testimony, supported by all the indicia of credibility, that Hocker did have telephones in operation in Audubon before October 1, 1897. This appears in the testimony of one Swaney, who, in August 1897, went to Audubon to talk to said Hocker, superintendent of schools, about going away to school, and who worked on the telephone line before October 1, 1897. One Kelly, then an employee of a competing telephone company and familiar with the telephone business in that territory, was emphatic in his testimony that Hocker had at least four subscribers before October 1, 1897. In a deposition taken on April 3, 1931, Hocker, who started the telephone system which now belongs to appellee, testified that the telephone property and exchange had been in operation about 34 years.

As against this is the testimony of one Arnold who testified "not from personal knowledge" but from "receipts and papers from the telephone company." In answer to an inquiry as to when the exchange commenced to furnish service, he answered:

"Can't just recall, but I know it was in the early part of 1898."

Bilharz, who fixed the time "this exchange had been in oper-

ation'' at 33 years prior to 1931, based his statement on the fact that Hocker had a charge account at Bilharz's store on which he was given credit for telephone service for January and February 1898.

The testimony of Griffith, one-time publisher of the Audubon Republican, is perhaps the most persuasive testimony produced by appellant, if it be competent. The newspaper, under date of September 9, 1897, carried the following:

''Professor Hocker is soliciting the businessmen here with the expection [sic] of putting in a telephone system.''

When asked whether or not Hocker on the date last mentioned had constructed a telephone system in the city, Griffith answered:

''I don't think there was any telephones at that time.''

The same newspaper, under date of November 11, 1897, carried this:

''The poles for a new system of telephones which Professor Hocker is putting in the city. Men are now working putting on the arms. Work will proceed as fast as possible.''

On cross-examination, Griffith said:

''I went into the drug store [in Audubon] in 1898. There was no telephone there when I went in. It was put in soon after I went into the drug store. There was no general telephone exchange before that. There was a private telephone line here in town. There was no exchange established like there is now. That is what I refer to as being no 'phones in.''

And further, on cross-examination, this:

''Q. Do you know whether or not Professor Hocker had a telephone in his home before October 1, 1897? A. No, I don't. Q. Would you say he didn't? A. I don't know anything about it.''

These newspaper items were received over objections upon which the trial court did not rule, and we do not find it necessary to discuss them now. The witness admitted that he did not

collect the items and had no independent recollection on the subject.

Doctor Childs, another witness for appellant, who thought the telephone system was established in 1898, on cross-examination, said:

"Q. Would you say that at that time or before October 1, 1897, he [Hocker] didn't have an exchange there? A. I wouldn't. I don't know."

Other witnesses, the county auditor and two clerks of appellant City, testified that they found no charges against either the county or the City before October 1, 1897.

We have, of course, omitted many details which the trial court had before it in reaching its conclusion. On the whole record it found for appellee, and we hold that its decree was right.

From the time the question first came before this court we have consistently held that one who entered streets and alleys before October 1, 1897, with his telephone lines, acquired a perpetual franchise with which the municipality had no power to interfere except in the exercise of its police power. City of Osceola v. Middle States Util. Co., 219 Iowa 192, 195, 257 N. W. 340, 342; City of Cherokee v. Northwestern Bell Tel. Co., 199 Iowa 727, 202 N. W. 886; City of Des Moines v. Iowa Tel. Co., 181 Iowa 1282, 162 N. W. 323; State v. Iowa Tel. Co., 175 Iowa 607, 154 N. W. 678, Ann. Cas. 1917E, 539; State v. Chariton Tel. Co., 173 Iowa 497, 155 N. W. 968; State v. Nebraska Tel. Co., 127 Iowa 194, 103 N. W. 120; Chamberlain v. Iowa Tel. Co., 119 Iowa 619, 93 N. W. 596.

Other questions are argued, among them the contention that there was an abandonment or waiver of the legislative franchise if one had been acquired. We find no evidence of an intent to abandon any of the rights that Hocker and his successors had. We have said that "as a fundamental doctrine in all cases that have been brought to our attention, one of the necessary elements to constitute an abandonment is an intention to abandon; nonuser is not sufficient." City of Osceola v. Middle States Util. Co., supra. In the case at bar we not only

have no evidence of intent to abandon but a constant and unbroken user of the streets for telephone purposes.

But it is urged that an ordinance granting a franchise to Hocker was adopted on September 30, 1897. This, it is claimed, resulted in Hocker's waiving his rights. We do not so construe it. The council had no power at that time to pass such an ordinance, nor did it have until the Code of 1897 went into effect on October 1st of that year. Moreover, the fact that Hocker did not fully understand his rights does not argue abandonment. The same may be said of the franchise granted to Simpson in 1910. He was then owner of the telephone system, and when asked whether he knew that he had another franchise, said:

"Well, no, I never did. The fact is there was a rumor along in those days that anybody that was here prior to a certain time had a perpetual franchise."

And further:

"I had no way of knowing personally whether or not there was a perpetual franchise."

When he sold to the Iowa Telephone Company his bill of sale undertook to transfer, "All franchises now owned by the grantor and under which the physical property hereby conveyed is now or has ever been operated, whether granted by the state or municipalities, etc."

One other proposition remains to be considered and that is appellant's contention that the various transfers from Hocker down to the present passed title to the physical properties only and not the franchises under which they had been operated. It is difficult to believe that this contention is seriously urged. We have already seen that one transfer mentioned "franchises." If this were not so it would still be impossible to believe that a substantial business enterprise was passing from one owner to another while at the same time the right to occupy the streets and alleys of the City did not. While the parties, at different times interested here, did not handle the business with the precision that is common in these days, there can be no doubt

that each grantor intended to convey and each grantee to acquire all the rights pertaining to the telephone system.

We are satisfied that the trial court reached the right result, and its decree is affirmed.—Affirmed.

All JUSTICES concur.