CITY OF EMMETSBURG, IOWA, appellant, v. CENTRAL IOWA TELEPHONE COMPANY, appellee.

No. 49661.

(Reported in 96 N.W.2d 445)

MAY 5, 1959.

Milton W. H. Morling, of Emmetsburg, and Alan Loth, of Fort Dodge, for appellant.

Kelly, Spies & Culver, of Emmetsburg, and Parrish, Guthrie, Colflesh & O'Brien, of Des Moines, for appellee.

THOMPSON, C. J.—Plaintiff's action is in equity. The petition asserts that the defendant's franchise permitting it to occupy the streets and alleys in the plaintiff-city and to conduct the business of furnishing telephone service to the city and its residents expired in 1951, and since that time the defendant has been occupying the public streets and alleys without lawful right to do so. It is prayed that the defendant be enjoined from so using and occupying the streets and alleys, that a declaratory judgment be entered holding that it has no right so to do, and for a mandatory injunction commanding it to remove its lines. The defendant answered, in effect asserting that it holds a perpetual right to use the streets and alleys; that it and its predecessors in interest have been so occupying the streets and alleys since prior to October 1, 1897, and that under statutes in force prior to that date persons or corporations were given the right to construct telephone lines in and upon the highways of the state which could not be revoked or canceled by any action of the cities or towns. By amendment to its answer the defendant also pleaded laches and estoppel.

By way of reply, the plaintiff denied that the defendant acquired any franchise rights which might have existed prior to October 1, 1897; denied that such rights, if any existed, were transferable; and pleaded abandonment of any franchise existing before the date last-named. The case proceeded to trial upon the issues so framed, with the result that a decree and

judgment were entered upholding the claim of the defendant that it holds under a perpetual franchise granted by the State of Iowa.

■ October 1, 1897, is the date when the enacted Code of 1897 became effective. Prior to that time, under section 780 of the Code of 1851, identical in effect with section 1324 of the Code of 1873, any person, firm or corporation was given the right to construct telegraph lines along the public highways of the state. By chapter 104 of the Acts of the Nineteenth General Assembly this was amended in 1882 to include telephone lines. This was the state of the law prior to October 1, 1897; and it has been held in a long line of cases that prior to that date cities and towns had no right to prohibit the use of their streets by telephone lines, or to grant franchises to persons or companies desiring to construct such lines. The first case reaching this point was Chamberlain v. Iowa Telephone Co., 119 Iowa 619, 93 N.W. 596. It was followed by State v. Nebraska Telephone Co., 127 Iowa 194, 103 N.W. 120; State ex rel. Larimer v. Chariton Telephone Co., 173 Iowa 497, 155 N.W. 968; State ex rel. Shaver v. Iowa Telephone Co., 175 Iowa 607, 154 N.W. 678, Ann. Cas. 1917E 539; City of Des Moines v. Iowa Telephone Co., 181 Iowa 1282, 162 N.W. 323; City of Cherokee v. Northwestern Bell Telephone Co., 199 Iowa 727, 202 N.W. 886; City of Osceola v. Middle States Utilities Co., 219 Iowa 192, 195, 257 N.W. 340, 342; and City of Audubon v. Northwestern Bell Telephone Co., 232 Iowa 79, 82, 5 N.W.2d 5, 6.

The importance of the October 1, 1897 date stems from the fact that the enacted Code of 1897 which went into effect on that date contains section 776, which provides that "No franchise shall be granted * * * by any city or town for the use of its streets, highways, avenues, alleys or public places, for any of the purposes named in the preceding section [among which were telephone wires and poles], unless a majority of the legal electors voting thereon vote in favor of the same at a general or special election. * * *." It was held in Farmers Telephone Co. v. Town of Washta, 157 Iowa 447, 133 N.W. 361, that after the taking effect of section 776, supra, cities and towns were empowered to grant franchises to those desiring to use the public streets for the construction of telephone lines. Prior to that

time the cases held that the state had not delegated power to municipalities to prohibit the use of their streets for telephone lines, but that the state statute, section 1324 of the Code of 1873, as amended by chapter 104, Acts of the Nineteenth General Assembly, supra, granted such rights to persons, firms or corporations, and the cities and towns could not forbid it. So those who had built lines prior to October 1, 1897, are held to have secured perpetual rights, while those constructing such lines after that date are subject to control by the municipalities under sections 775 and 776, Code of 1897, now found in substance as sections 386.1 and 386.3 of the Code of 1958.

I. It thus becomes apparent that the facts as to whether there were existing telephone lines and rights in Emmetsburg prior to October 1, 1897, and whether the defendant has acquired these rights are of the utmost importance. There is little or no dispute that the Emmetsburg Telephone Company was incorporated on October 21, 1897, and shortly thereafter began operating a telephone system in the City; that on November 16, 1926, it transferred its rights to one G. N. Clark, who on November 24, 1926, in turn transferred to the Iowa Union Telephone Company; and on December 17, 1938, this company transferred its rights to the defendant. It is the situation prior to the operation by the Emmetsburg Telephone Company and what, if any, rights it received from persons who may have been the owners of telephone lines and equipment prior to October 1, 1897, that form the basis for controversy here.

II. In this connection, the perpetuated testimony of one J. H. Godden is vital. It is not an exaggeration to say that the defendant's case depends upon this testimony. The records of the Emmetsburg Telephone Company had been lost or destroyed and were not available at the trial. It was necessary for the defendant to prove its case by the recollections of persons who were living at the time the Emmetsburg Company began operation and some years prior thereto. Since the defendant admits it is occupying the streets with its lines, it is necessary that it justify such occupation; which means that the burden of proof is upon it to show by what right it is there. As we said in City of Audubon v. Northwestern Bell Telephone Co., supra, the years that have elapsed since the first telephone lines and

equipment were installed make it difficult to procure exact evidence concerning them, their rights and their franchises. This is still more pointed now than at the time the Audubon case was decided, in 1942.

Since the important date is October 1, 1897, it has become more and more difficult to find witnesses who can testify as to events prior to that time, and their recollections are apt to be more and more uncertain. Of course, as the plaintiff well says, difficulty in procuring evidence does not excuse the party upon whom rests the burden of proof from making his case.

Probably with this situation in mind and being cognizant of the added difficulties imposed by the passing of the years, the defendant's immediate predecessor in interest, the Iowa Union Telephone Company, in 1938 took time by the forelock and undertook to perpetuate the testimony of two residents of Emmetsburg who were thought to have knowledge of the telephone situation in that city on and prior to October 1, 1897. One of these was J. H. Godden, above referred to. He was seventy-seven years of age at the time, and died shortly after his deposition was taken. The other, Dwight G. McCarty, was still living at the time of the trial, and so his deposition could not be used, except for one answer to which reference will be made later.

The Iowa Union Telephone Company filed its application under the provisions of section 11400 of the Code of 1935, then in effect. We set out this section herewith:

"11400. Petition. The testimony of a witness may be perpetuated in the following manner: The applicant must file in the office of the clerk of the district or superior court a verified petition, which shall set forth the subject matter relative to which testimony is to be taken, the names of the persons interested, if known, and, if not, such general description as he can give of such persons, as heirs, devisees, alienees, or otherwise. It must also state the names of the witnesses to be examined, the interrogatories to be propounded to each, that the applicant expects to be a party to an action in a court of the state, in which such testimony will, as he believes, be material, and the obstacles preventing the immediate commencement of the action, where he expects to be the plaintiff."

The application recited that it operated a telephone exchange in Emmetsburg, certain wires, poles and other apparatus occupied the streets and alleys and had so occupied them since prior to October 1, 1897, and applicant is entitled to so occupy said streets and alleys. The fact that such streets and alleys have been occupied by said wires and poles and they have been used for rendering service to the public can be proved only by persons of advanced age who are familiar with the facts and unless their testimony is perpetuated it will soon be impossible to prove such facts. It is further alleged that applicant expects, at some future date, to be a party defendant in a court of this state in which the matter of the occupation of the streets and alleys by telephone poles and wires used in rendering service to the public will be an issue.

The application was granted, and the depositions of Godden and McCarty were duly taken. Objection was interposed to the admission of the perpetuated testimony of Godden on several grounds; but in argument plaintiff says: "One is so plainly good that we will notice no others." So the others are not argued, and we give them no attention. In the face of the plaintiff's confident assurance that the ground argued is good, it seems almost presumptuous for this court to disagree; yet, if we should adopt a policy of assenting as a matter of course to all propositions which counsel assert are so certainly in their favor that there can be no possible argument, we should often find ourselves bound to hold two ways on many questions. It is necessary that we examine the contentions and decide for ourselves; and, following this rule, we do not find the nonadmissibility of the Godden deposition as clear as the plaintiff thinks. In fact, we believe it was admissible.

 The ground of objection which plaintiff argues is, that testimony may be perpetuated by deposition only where the party applying has no means of bringing the matter in question into court so that the testimony wanted may be used in the course of a speedy litigation. It must be pointed out that at the time (1938) when this application was made and acted upon, we had no declaratory-judgment procedure in Iowa. We did not then decide moot questions. But the plaintiff says that the Iowa Union Telephone Company might have precipitated the

litigation and had the necessary questions determined by bringing an action to quiet title to its franchise; that it was not necessary for it to wait until its rights were challenged by the City of Emmetsburg, or by a taxpayer, or another. The defendant asserts such a quieting-title action would not have lain under our practice at that time. We do not find it necessary to decide this question. We think that under the wording of section 11400, supra, testimony might be perpetuated whether or not an action might have been brought by the applicant to determine the rights to which the wanted testimony might be applicable.

■ This arises from a consideration of the statute itself. There is no doubt that without the statute, under the equity practice for filing a bill to perpetuate testimony, the rule was as the plaintiff asserts. No testimony might be perpetuated under such a bill unless it was made to appear, not only that the applicant could not compel the adverse parties to bring an action, but that he could not commence such an action himself. The cases cited by the plaintiff fall generally in this category. Arizona v. California, 292 U. S. 341, 54 S. Ct. 735, 737, 78 L. Ed. 1298, 1301; Westinghouse Machine Co. v. Electric Storage Battery Co., 3 Cir., 170 F. 430, 25 L. R. A., N. S., 673, 680, while Boatright v. Smith, 208 Ga. 158, 162, 65 S.E.2d 589, 592, turns upon a specific provision of the Georgia Code. Thus, in the latter case, it is said: "The taking of testimony prior to the institution of a suit is authorized only when 'it . shall not be in his power to commence' ", quoting from the Code. Other cases cited by the plaintiff were decided under the general equity rule or statutory provisions not comparable to our section 11400. The Supreme Court of Vermont, in In re Petition of Central Vermont Public Service Corp., 115 Vt. 204, 55 A.2d 201, under a statute which replaced the former equity practice, held that the same rules applied and it was necessary to show that the applicant had no power to commence the litigation himself. Actually there was litigation then pending; but taking the language of the court as it is written, it does make the above requirement. However, the Vermont statute applicable, which we have examined, lacks the pertinent language contained in our section 11400, and the case cited is not in point.

Our statute, as it stood in 1938, closed with the words "and the obstacles preventing the immediate commencement of the action, *where he expects to be the plaintiff.*" (Italics supplied.) By way of contrast, our present Rule of Civil Procedure 160(*a*) says *"which he is then unable to bring or cause to be brought."* (Italics supplied.) The allegation of the application material here is that "It [the applicant] expects, at some future date, to be a party defendant \* \* \*." So it appears that it was sufficient, under the statute governing when the application was filed, to allege only the obstacles in the way of immediate commencement of the action, when the applicant expected to be the plaintiff. There was no requirement that one who "expected to be a party defendant" must show reasons why he could not bring the matter to issue as a plaintiff. This quite evidently modified the general equity practice rule; and we must take the statute as it was written. The legislature must be assumed to have had some purpose in modifying the somewhat strict provisions of the equity practice theretofore prevailing, and it undoubtedly had the right to do so if it chose. We see no reason why it could not eliminate the requirement that the applicant must show the reason why he himself could not bring an action to test the controverted rights when he expected to be the defendant. The language is clear that he need make this showing only when he expects to be the plaintiff. As the Wisconsin Supreme Court said in Sioux Land Co. v. Ewing, 165 Wis. 40, 44, 160 N.W. 1059, 1061: "Evidently, however, the legislature intended its new rules embodied in these statutes to take the place of the old practice, and we can find in the language of the statutes themselves no grounds for holding that \* \* \* such a provision of the old rule should survive in the new." The Supreme Court of Texas has adopted the same reasoning in Ramsey v. Gardner, 154 Tex. 457, 463, 279 S.W.2d 584, 587, 588. After stating the rule under the general equity practice, and citing In re Petition of Central Vermont Public Service Corp., supra, as an example of the holding of some courts that even under the statute the same showing must be made, the Texas court said: "The taking of depositions in this State is controlled by the applicable provisions of the Rules, and is not subject to all the conditions and limitations of the equitable bill to preserve testimony."

We agree. The legislature omitted from section 11400 the requirement that an applicant must show why he could not bring an action himself to test his rights, in favor of the milder stipulation that he must show this only when he expected to be plaintiff. The deposition of J. H. Godden was properly admitted in evidence.

III. Other propositions assigned for reversal by the plaintiff must be considered in the light of Mr. Godden's testimony, and that of other witnesses. We note these stated propositions: 4, that no franchise was granted either by the legislature under section 1324, Code. of 1873, supra, except to an organization holding themselves out as giving, and obligated to give, service to the public generally, and Godden, McCarty and the other citizens who built the first lines were not such a public service organization; 5, that defendant's evidence failed to prove that Godden et al. transferred any franchise to it; 6, that the legislative franchise to occupy the streets and alleys under section 1324, supra, was not transferable without the assent of the state, and no such assent is shown; 7, there was an abandonment of the claimed legislative franchise prior to 1938; and 8, the legislative franchise was never perpetual in favor of the local urban telephone system.

We consider first stated Proposition No. 4. It is strongly urged by the plaintiff that the right under section 1324, Code of 1873, supra, could be acquired only by those who intended, and were obligated, to offer service as a public utility, with attendant duties, to all those requesting it. The defendant denies this, asserting that the right to construct telephone lines is not so limited. We are constrained to agree with the plaintiff at this point. The solution to the problem is found in the statutes themselves. Section 780, Code of 1851, now a part of section 1324, Code of 1873, and of section 2158, Code of 1897, gives the right to construct the lines not only upon and along the public highways, but "over any lands belonging to * * * any private individual." Immediately following sections in each of the Codes provide "nor shall they be set up on the private grounds of any individual without paying him a just equivalent for the damages he thereby sustains." Section 781, Code of 1851; section 1325, Code of 1873; section 2159, Code of 1897. This is

followed in each Code by a provision that, "If the person over whose lands such * * * line passes claims more damages therefor than the proprietor of such line is willing to pay, the amount thereof may be determined in the same manner as provided for taking private property for works of internal improvement." Section 782, Code of 1851; section 1326, Code of 1873; section 2160, Code of 1897.

The provisions for taking private property by the builders of telephone lines unmistakably show the intent of the legislature. This could be done only for a public use. The power of eminent domain, under the Iowa Constitution, can be exercised only where a public use is involved. If the statutes last above referred to should be construed as permitting the taking of private property for the construction of lines intended only for private use, they would be unconstitutional; and we adopt the construction which makes a statute constitutional in case of ambiguity. Hunter v. Colfax Consolidated Coal Co., 175 Iowa 245, 320, 154 N.W. 1037, 1064, 157 N.W. 145, L. R. A. 1917D 15, Ann. Cas. 1917E 803.

We think, however, it is not necessary to resort to this rule of construction here. The statutes are plain.

Section 18, Article I, of the Iowa Constitution provides: "Private property shall not be taken for public use without just compensation first being made, or secured to be made * * *." After quoting this section, we said in Ferguson v. Illinois Central R. Co., 202 Iowa 508, 510, 210 N.W. 604, 605, 54 A. L. R. 1: "If the effect of the order of the board of railroad commissioners * * * is to deprive the appellant of private property for other than a public use, then such order is violative of the appellant's constitutional rights." In Carroll v. City of Cedar Falls, 221 Iowa 277, 285, 261 N.W. 652, 656, is this statement of the rule: "It is the well-settled rule of law that private property cannot be confiscated by a municipality or any other corporation under the right of eminent domain, except for a public purpose." So in the case at bar the statutes giving the builders of telephone lines the right to cross private property, with just compensation for damages, must be held to refer to lines constructed for public uses.

But this holding does not mean that the plaintiff has won its case. We think it fairly appears that the lines and system existing prior to October 1, 1897, were devoted to the public use. It is shown by the perpetuated deposition of J. H. Godden and by the testimony of Dwight G. McCarty and others, that there had been telephone lines in Emmetsburg for many years prior to that date; that at least as early as 1895 there was a telephone exchange operating in the jewelry store of W. H. Robbins, with lines connected to it so that switchboard service was available. About 1895 a concern known as the Western Electric Telephone Company was granted a franchise to set its lines and poles in the streets; this concern used the same exchange, with some evidence that it installed it. There is also some evidence that this company was engaged in long-distance service only.

This was the situation when the Emmetsburg Telephone Company came on the scene in 1898. There is no doubt that it took over the exchange, poles, lines and other equipment; and there is evidence it continued to operate them in the same manner as before, rendering public service with substantially the same apparatus and, for some years, through the same exchange in the same location. The franchise given the Western Electric Telephone Company is of some significance here. It was void, because at that time, 1895, the city had not been given the right by the legislature to grant it; but it does show that a public service was contemplated. It is true that defendant pleaded its rights were acquired from Godden, McCarty, Robbins and others "then residents of the city." Perhaps technically the Western Electric Telephone Company was not a resident of Emmetsburg; but it was there with its lines and operating a telephone service to the public. The situation was fully examined and tried out during the progress of the case, and no one could fairly claim surprise from what developed.

Another inference arises which we think important upon the question of a public use. We have Godden, McCarty et al. occupying the streets of the city with their lines, and either by themselves or with the Western Electric Telephone Company operating a telephone exchange. The only right they had to so occupy the streets prior to October 1, 1897, was by virtue of

the statutes above-cited, which we have shown clearly implied a corresponding duty to furnish a public service. No right existed without the duty. We will not presume that they were occupying the streets unlawfully. There is no doubt that anyone desiring to connect with the exchange in the Robbins store might have done so. It may be that the exact situation was imperfectly defined and understood in those early days of the telephone; but we think it is now clear.

IV. Since it appears that Godden et al. transferred their properties to the Emmetsburg Telephone Company, from whom defendant claims through intermediate conveyances, plaintiff's contention, expressed in its Proposition No. 5, that there is no showing that they transferred any franchise to it is answered by the City of Audubon v. Northwestern Bell Telephone Co., supra. There we answered the same argument by saying: "We have already seen that one transfer mentioned 'franchises.' If this were not so it would still be impossible to believe that a substantial business enterprise was passing from one owner to another while at the same time the right to occupy the streets and alleys of the City did not." 232 Iowa 79, 83, 5 N.W.2d 5, 7.

V. So with the plaintiff's Proposition No. 6. It is contended that the franchise to occupy the streets and alleys under section 1324, supra, was not transferable or assignable without the assent of the state, and no such assent has been given. As an original proposition this question might be extremely troublesome. The right of assignment of franchises has been passed upon by many courts, with varying results. But we think the matter is foreclosed as to this particular type of franchise in Iowa. In several of the cases cited above in which this court has upheld telephone companies in asserting rights under section 1324, supra, the same situation prevailed. Assignments or transfers of rights were present in most, if not all, of the cases beginning with Chamberlain v. Iowa Telephone Co., supra, and running through City of Audubon v. Northwestern Bell Telephone Co., also supra. It is true the question of assignability or transfer was not much discussed; apparently the right was not questioned. We did, in State ex rel. Shaver v. Iowa Telephone Co., 175 Iowa 607, 617, 154 N.W. 678, 681, Ann. Cas. 1917E 539, quote with approval from City of Owensboro

v. Cumberland Telephone & Telegraph Co., 230 U. S. 58, 33 S. Ct. 988, 57 L. Ed. 1389, this: "As a property right, it [a franchise] was assignable, taxable and alienable." The transfers of interests, including franchises, were specifically mentioned and approved in the City of Audubon case, supra, and in City of Osceola v. Middle States Utilities Co., 219 Iowa 192, 257 N.W. 340. We have so often and for so many years approved transfers of this sort and upheld rights asserted under them that in the interest of settled property rights and established principles we think interference at this time would be unwarranted. We do not hold that all classes of franchises are transferable without the consent of the grantor; there are perhaps reasons why this should not be so. But we have approved transfers of the rights granted by section 1324, supra, and we reaffirm such approval.

VI. City of Audubon v. Northwestern Bell Telephone Co., supra, contains a sufficient answer to the claim of abandonment of the rights obtained under section 1324, supra. Here there was a franchise granted to Western Electric Telephone Company, one of defendant's predecessors in interest, in 1895. This, however, was beyond the power of the council at that time. It could not override the state law or go beyond the powers granted. Waiver or abandonment imply an intent to waive or abandon. 232 Iowa 79, 82, 5 N.W.2d 5, 7; City of Osceola v. Middle States Utilities Co., 219 Iowa 192, 195, 197, 198, 257 N.W. 340, 342, 343; State ex rel. Larimer v. Chariton Telephone Co., 173 Iowa 497, 500, 155 N.W. 968, 970. The facts in these cases were parallel with those now before us. Municipal franchises and their acceptances, whether granted before October 1, 1897, or after, were without exception held not to amount to abandonment of rights given by the legislature by section 1324 of the Code of 1873, absent any showing of an intent to abandon such rights.

VII. Finally the plaintiff urges that our previous decisions, holding that perpetual franchises were obtained by those who, by themselves or their predecessors in interest, secured their rights prior to October 1, 1897, were not well considered, assert a wrong and harmful principle, and should be overruled. Perpetual franchises should not be, and generally are not, fa-

vored in the law. But the decisions upholding them in Iowa are of too long standing to be lightly overturned. We have in City of Audubon v. Northwestern Bell Telephone Co., City of Osceola v. Middle States Utilities Co., State ex rel. Shaver v. Iowa Telephone Co., and State ex rel. Larimer v. Chariton Telephone Co., all supra, stated and upheld this right in varying phrases but with identical meanings. Chamberlain v. Iowa Telephone Co., supra, was decided in 1903; and while it did not use the word "perpetual" it did in effect say that one who acquired his rights prior to the governing date could not be disturbed. The law has been too long settled and too many rights have been established under it to warrant a change now.

VIII. Some contention is made as to the admissibility of one answer from the original deposition of Dwight G. McCarty, who was present as a witness and testified on the trial. Ordinarily the deposition would not have been admissible; but under some unusual circumstances connected with the examination of Mr. McCarty it is contended this one answer was properly received. The matter is triable de novo here; we do not regard the contested testimony as determinative in the case, and so make no ruling.—Affirmed.

All JUSTICES concur.