Clifford Allen SISCO and Patricia Sisco, and Lisa Sisco, a Minor by Clifford Allen Sisco, Next Friend, Plaintiffs-Appellants,

v.

IOWA–ILLINOIS GAS AND ELECTRIC COMPANY, an Illinois Corporation, and Northwestern Bell Telephone Company, an Iowa Corporation, Defendants-Appellees.

No. 84–681.

Court of Appeals of Iowa.

March 26, 1985.

John J. Carlin of John J. Carlin, P.C., and John Flynn of Wells, Brubaker, DeSilva, Flynn & Darland, P.C., Davenport, for plaintiffs-appellants.

Charles W. Brooks of Lane & Waterman, Davenport, for defendant-appellee Iowa-Illinois.

Peter C. Fieweger and Linda E. Frischmeyer of Katz, McAndrews, Durkee, Balch & Lefstein, P.C., Rock Island, Ill., for defendant-appellee Northwestern Bell.

Heard by OXBERGER, C.J., and DONIELSON and SNELL, JJ.

**OXBERGER, Chief Judge.**

This appeal is made from several rulings of the trial court including a motion in limine, two applications to adjudicate law points, two motions for partial summary judgment, and a motion to continue. We affirm in part, reverse in part, and remand.

Plaintiff, Clifford Sisco, was riding his motorcycle along Rockingham Road in Davenport, June 22, 1980. He drove off the normally traveled portion of the road and struck a guy wire attached to a utility pole. Sisco lost his arm and part of his shoulder, suffered facial lacerations and other severe injuries. The pole belonged to Northwestern Bell and was located in the area between the street and the sidewalk. It was placed at the location by Bell's predecessor who had a franchise from the city. The pole was replaced in 1955 and again in 1969. No permit was obtained for the 1969 replacement. Two guy wires had been installed, one of them by defendant Iowa-Illinois who was leasing space on the pole.

Sisco, along with his wife and daughter, filed a joint petition against Iowa-Illinois and against Bell. They sought recovery on the theories of negligence and public nuisance.

Subsequently, each defendant filed a motion in limine seeking exclusion of any reference to Iowa Administrative Code section 250–25.2(2)(c), which requires all guards on guy wires be color marked. This regulation was enacted in 1979. On December 16, 1983, the trial court ruled the section of the Code would not be admissible to show the rule applied to guy wires which preexisted the adoption of the regulation, but was admissible to show "the state of the art."

A motion for summary judgment, and two applications to adjudicate law points were made by Bell. Another application to adjudicate law points was also made by Iowa-Illinois. The court ruled on these motions on February 17, 1984. It granted partial summary judgment and held there was no nuisance per se, finding there was no violation of permit requirements by Bell in replacing the pole, and that Bell did not violate the law by not seeking a franchise to place the poles in the city. An applica-

tion to adjudicate law points pursuant to Iowa Rule of Civil Procedure 105 was granted, holding nuisance was not a theory available to plaintiffs since Sisco had left the main portion of the road when the accident occurred. In making its ruling, the court referred to a plat submitted by plaintiffs as a pretrial exhibit. A second application to adjudicate law points regarding proximate cause was denied, the court finding the facts were controverted. A third application to adjudicate law points was granted, the court finding, as it did in the motion in limine, that there was no duty to retrofit the poles with color-marked guy wire. On March 7, the court granted another motion for partial summary judgment, ruling as it did in the first application to adjudicate law points, that the nuisance theory was not available since plaintiff had left the road when the accident occurred. On March 12 a motion to continue by plaintiffs was denied.

The plaintiffs withdrew their causes of action for negligence, and the court subsequently found no issues remained for trial and dismissed the petitions.

Plaintiffs assert the court erred: (1) in granting the application to adjudicate law points and summary judgment, which held there was no nuisance theory available since plaintiff left the traveled portion of the road; (2) in granting a summary judgment on the issue of nuisance per se by finding no statute was violated by Northwestern Bell; (3) granting the motion in limine and application to adjudicate law points, finding there was no duty to retrofit existing guy wires with colored markers; and (4) refusing to grant the motion to continue.

## I. The Theory of Nuisance

■ An application to adjudicate law points may be granted when there is a point of law raised which goes to the whole or any material part of a case. Iowa R.Civ.P. 105. It is to be made based only on uncontroverted facts, and no evidence is allowed outside the pleadings. *Montz v. Hill-Mont Land Co.*, 329 N.W.2d 657–58 (Iowa 1983); *M & W Farm Service Co. v.*

*Callison*, 285 N.W.2d 271, 273 (Iowa 1979). A motion for summary judgment may be joined with an application under rule 105. *Kriv v. Northwestern Securities Co.*, 237 Iowa 1189, 24 N.W.2d 751 (1946). A summary judgment is granted under Rule 237 when no genuine issue of material fact remains to be decided, and, as a matter of law, the court and not the fact finder should make the determination. As a result, both motions involve the same question of whether the issue should be decided as a matter of law, based on uncontroverted facts, or whether the issue should be presented to a fact finder. *Kriv* at 1193, 24 N.W.2d at 754.

■ A public nuisance is found when defendant's conduct is unlawful or antisocial and it unduly and unreasonably interferes with a substantial number of people in the lawful exercise of a public right. *Pottawattamie County v. Iowa Department of Environmental Quality, Air Quality Commission*, 272 N.W.2d 448, 453 (Iowa 1978).

A nuisance is defined in our Code as including: "The obstructing or encumbering by fences, buildings, or otherwise the public roads, private ways, streets, alleys, commons, landing places, or burying grounds." Iowa Code § 657.2(5) (1983).

■ The court reasoned that since the public had no right to drive other than in the traveled portion of the street, the elements of public nuisance could not be met.

Plaintiffs point to the definition of street found at Iowa Code § 321.1(48) which states:

"Street" or "highway" means the entire width between property lines of every way or place of whatever nature when any part thereof is open to the use of the public, as a matter of right.

Plaintiffs also refer the court to a number of cases which indicate a nuisance may be found when an object is close enough to the street to cause an obstruction. *Kearney v. Ahmann*, 264 N.W.2d 768 (Iowa 1978); *Weber v. Madison*, 251 N.W.2d 523 (Iowa 1977); *Town of Lamoni v. Smith*, 217

Iowa 264, 251 N.W. 706 (1934); *Incorporated Town of Ackley v. Central States Electric Co.*, 204 Iowa 1246, 214 N.W. 879 (1927). The Siscos also say it was error for the court to consider the plat submitted as a pretrial brief, since the facts concerning the placement of the pole and wires are controverted.

Northwestern Bell responds by claiming several of the cases cited by plaintiffs for the definition of street and nuisance are inapplicable to this case, because the question in those cases involved the municipalities' power to declare something a nuisance. Bell says this is different from the situation here, where the nuisance theory is being used to recover for personal injury. Bell also refers the court to a case it says is on point for the proposition that an object cannot be a nuisance if it is not in the street. *Greenland v. City of Des Moines*, 206 Iowa 1298, 221 N.W. 953 (1928).

We first note that the question of how far the pole and wires were located from the traveled portion of the street is a controverted fact. This is evident from Bell's brief, where they claim the pole is six feet from the curb and plaintiff claims it is four feet from the curb. The only point which appears to be uncontroverted is that the pole is not in the traveled portion of the street. This is the only fact concerning the distance from the street the court should have considered. However, we note also that if the court's decision may be upheld considering the uncontroverted facts, any error in reviewing the plat is harmless. *See Ke-Wash Co. v. Stauffer Chemical Co.*, 177 N.W.2d 5 (Iowa 1970).

We disagree that the *Greenland* case cited by the counsel for Bell, or the *Weber* case cited by the Siscos, are pertinent to plaintiffs' action. Both these cases dealt with a somewhat similar fact situation, where a person was injured when there was an object on or near the road. *Weber* at 525; *Greenland* at 1299, 221 N.W. at 953. However, the court was dealing not with the question of nuisance, but with the question of proximate cause for the purposes of determining negligence. *Id.* In *Greenland,* the court decided the cause of the plaintiff's accident was not the fact that a pole was located at the end of a road, but because plaintiff's windshield wipers were not used and it was raining. *Id.* at 1301, 221 N.W. at 953. It was on this point the court commented that the pole was properly located off the traveled portion of the road. *Greenland* at 1300, 221 N.W. 954. The court never addressed the issue of whether the pole could constitute a nuisance if it was located on the parking, and not in the street.

We also disagree with the contention that the cases defining "street" for the purpose of determining what constitutes a nuisance are irrelevant merely because the court dealt with the municipalities' powers in this area. Defendant Bell relies heavily on the case of *Lacey v. City of Oskaloosa*, 143 Iowa 704, 121 N.W. 542 (1909) for this proposition. The court was to determine whether the city could declare hitching posts in the street a nuisance, and order them removed. *Id.* Bell points to language which states the posts did not have to interfere with public travel for the city to declare them a nuisance, and other language indicating it did not matter if the posts were a nuisance, the city still could remove them. *Id.* at 709, 715–16, 121 N.W. at 544–45. Bell claims this shows the cases involved a much broader topic than mere public nuisance.

A full reading of the opinion, however, shows that the court first stated the city of Oskaloosa had the right to declare the posts a nuisance, *and* also had the right to control objects not in the street since the city had the power to control all public grounds. *Id.* at 709, 121 N.W. at 544. It was in describing the power of the city to control public grounds that the language appears quoted by Bell. *Id.* at 715–16, 121 N.W. at 544–45. In the first part of the opinion, the court limited itself to defining a nuisance only, and cited the section of the Code which is the predecessor to the definition of nuisance, now found at Iowa Code § 657.2 (1983). *Id.* at 709, 121 N.W. at 544. The language is identical in both the 1909

version and in the current version of the statute. *Id.* In so defining a nuisance, the court stated a street includes the public way from side to side and end to end. *Id.*

We believe the court was saying that cities can be liable for creating a public nuisance, and can also enjoin public nuisances; in either case, the definition of nuisance is the same and such definitions are relevant to this case.

This proposition is confirmed by the *Ackley* case cited by plaintiffs. There, the court was defining a public nuisance and described the scope of the city's duty regarding objects on and near the street saying:

"This duty extends, not merely to the surface of the street or walk, but to those things within its control which endanger the safety of those using the street or walk properly. It may not be the duty of a city to open to public travel a given street to its full width, and it may not be its duty to construct a sidewalk thereon; but when it has assumed that obligation, it should make the street and walk reasonably safe for the uses for which they are intended."

It must follow, as a logical conclusion from the various cases, that, to be an obstruction to the street, within the meaning of the statute, it is not necessary that the thing charged to be an obstruction rests upon or is in immediate contact with the surface of the street. It may be an object which is out of the reach or way of ordinary traffic; yet, if it be so situated with the relation to the street that it may endanger the traveling public, it comes within the rule against obstructions, especially where it is of a dangerous character.

*Id.* at 1252–53, 214 N.W. at 882. The court in this case takes the above language from another case, which dealt not with the power of a city to enjoin an act as a nuisance, but with a personal injury action against the city. *Blivin v. City of Sioux City,* 85 Iowa 346, 351, 52 N.W. 246 (1892).

The Restatement is also instructive on this point. It indicates a possessor of land may be liable when creating a condition "so near" an existing highway that it could cause harm to those traveling on the highway or those who "foreseeably deviate from it in the ordinary course of travel." Restatement (Second) of Torts § 368 (1965). Bell claims this applies only to negligence cases, but comment "d" of this section states, "Any condition on abutting land which involves an unreasonable risk of harm to travelers in a public highway is normally a public nuisance. This section should therefore be read together with §§ 821B and 821C, dealing with tort liability for public nuisances."

Therefore, an obstruction may be a nuisance, even though it is not located in or upon the street, but near the street in a manner to endanger those foreseeably deviating from the street.

There is, however, a distinct limitation upon activity which falls within deviations described in the Restatement. The deviation must occur "in the ordinary course of travel." *Id.* At comment "g" the Restatement indicates, "The rule stated in the Section does not apply where the traveler intentionally deviates from the highway for a purpose not reasonably connected with travel upon it. It does not apply, for example, where he intentionally and unnecessarily takes a short cut cross the land..." The Restatement lists several illustrations where the deviation is incident to travel; as where the driver must deviate to avoid an obstacle in the road, take a detour, or skids on the highway. *Id.* The distinction, the comment continues, "is thus not one between inadvertent and intentional deviations, but between those which are incidents of travel and those which are not." *Id.*

The uncontroverted facts of this case do not indicate whether the deviation by Sisco was one which could be an incident of travel, or which was merely a shortcut. Even if the court considered the plat submitted as an exhibit by plaintiffs, it shows the pole and wire are located on the right-of-way, but not in the traveled portion of the street. It is located in a cement

area. It does not show if this concrete portion is used by parking for other cars, and could be assumed to be a part of the road by some travelers. In short, there is no way a determination can be made on this point with the uncontroverted facts before this court. A genuine issue of material fact remains to be decided whether the pole was located in a manner to be a nuisance, and whether Sisco's deviation was a normal incident of travel.

Iowa-Illinois argues that such a holding will mean that all objects located off the street are a nuisance. That takes the point too far. We only hold that it is possible an object not in or on the street may be a nuisance, and that we cannot say as a matter of law it is not a nuisance simply because it is not in the traveled portion of the road. We reverse the trial court's ruling on the application to adjudicate law points and summary judgment on this issue.

## II. Nuisance Per Se

It is undisputed that Northwestern Bell's predecessor obtained a franchise for the placement of telephone poles prior to 1897. It is also undisputed that Bell did not obtain a franchise after it took over the telephone company and the original franchise expired on February 26, 1926. Plaintiffs claim that Bell was required to have a franchise, and failure to obtain one is a violation of the section of the Code requiring a franchise, Iowa Code § 364.2(4) (1983). They claim that violation of this section of the Code constitutes a nuisance per se. Bell claims it has a perpetual easement to place telephone poles along the roads in Davenport.

The parties again argue different interpretations of the same cases. Plaintiff points to *East Boyer Telephone Co. v. Incorporated Town of Vail*, 166 Iowa 226, 147 N.W. 327 (1914). In this case, the court attempted to rectify the two different sections of the Code: Iowa Code § 477.1 (1983), then found at section 2158 of the 1897 Code, which indicates telephone companies have a right-of-way to construct telephone lines across public roads; and

Iowa Code § 364.2(4) (1983), then found at sections 775, 776 of the 1897 Code, which gives the city the power to grant a franchise for such purposes. *Id.* at 228, 147 N.W. at 329. It resolved the problem by finding the legislature had the right to restrict the ability to construct telephone poles, and the legislature exercised this power by enacting section 775. *Id.*

The parties also strongly dispute the meaning of court's findings in *City of Cherokee v. Northwestern Bell Tel. Co.*, 199 Iowa 727, 202 N.W. 886 (1925), a case which dealt with the specific issue here. The court held that the company's long distance lines were exempt from requiring a franchise, but that its other lines were not. *Id.* Plaintiffs claim this was because long distance lines were exempt from the franchise requirement, but that local lines were not. Bell claims what the court said was that a franchise obtained prior to the enactment of section 775 of the Code, in 1897, was a perpetual franchise, but those companies attempting to erect telephone poles after 1897 had to obtain a franchise first. The court, Bell says, was holding that the local line obtained later could not be "bootstrapped" to the long distance line which did not need a franchise because it was obtained prior to 1897.

The language of the court's opinion makes it clear that plaintiffs' interpretation is correct. The court goes on at length to describe the difference between long distance and local lines, and why local lines should be required to have a franchise. *Id.* at 733–34, 202 N.W. at 887–89. It states, "We reaffirm our construction ... that under the general legislative grant, a telephone company may carry a long-distance or toll line through a city ... without obtaining a franchise from the municipality; but that a telephone company cannot maintain a local exchange for the interchange of messages between the inhabitants of a city ... without first obtaining a franchise so to do." *Id.* at 736, 202 N.W. at 890.

While we agree with plaintiffs' interpretation of this case, we also agree with Bell's contention that this case is at odds

with a number of cases that hold the distinction is made, not by the type of telephone line used, but by whether the franchise was obtained prior to 1897. *City of Emmetsburg v. Central Iowa Telephone Co.,* 250 Iowa 768, 96 N.W.2d 445 (1959); *City of Audubon v. Northwestern Bell Tel. Co.,* 232 Iowa 79, 5 N.W.2d 5 (1942); *Smith v. City of Osceola,* 178 Iowa 200, 159 N.W. 648 (1916); *State, ex rel Shaver v. Iowa Telephone Co.,* (1915), 175 Iowa 607, 154 N.W. 678 (1915); *State, ex rel Larimer v. Chariton Telephone Co.,* 173 Iowa 497, 155 N.W. 968 (1916); *East Boyer Telephone Co. v. Vail,* 166 Iowa 226, 147 N.W. 327 (1914); *Chamberlain v. Iowa Telephone Co.,* 119 Iowa 619, 93 N.W. 596 (1903).

The court in *Emmetsburg* specifically stated: "those who had built lines prior to October 1, 1897, are held to have secured perpetual rights, while those constructing such lines after that date are subject to control by the municipalities under sections 775 and 776, Code of 1897 ..." *Emmetsburg* 250 Iowa at 772, 96 N.W.2d at 448. It added:

> Finally, the plaintiff urges that our previous decision holding that perpetual franchises were obtained by those who, by themselves or their predecessors in interest, secured their rights prior to October 1, 1897, were not well considered, asserts a wrong and harmful principle, and should be overruled. Perpetual franchises should not be, and generally are not, favored in the law. But the decisions upholding them in Iowa are of too long standing to be lightly overturned.... The law has been too long settled and too many rights have been established under it to warrant a change now.

*Id.* at 781–82, 96 N.W.2d at 453–54.

The cases cited by plaintiffs and defendants have not been overruled. We believe the cases are reconciled in viewing toll or long distance lines as exempt from the franchise requirement; and local lines as acquiring a perpetual franchise if the franchise was obtained prior to 1897. If no franchise was obtained prior to 1897, the local lines may be constructed only with a franchise grant. This is confirmed by the fact all cases cited distinguishing between franchises before and after 1897 deal with local lines. We hold that since Northwestern Bell's predecessor had a franchise for the local lines prior to 1897, the company has a perpetual easement, has not violated the statute, and there can be no nuisance per se.

Plaintiffs present another ground for a finding of nuisance per se. Ordinance 8, section 27 of the City of Davenport requires a permit must be obtained before placing poles for telephone service. No permits were obtained when Bell replaced the poles in 1955 and 1969.

Defendant Bell presents the affidavits of the Davenport Public Works Director, the City Electrician, and the Utilities Inspector, to the effect that, in practice, Bell has never been required to apply for such permits. Rather, Bell was treated in the same manner as the agreement between the city and Iowa-Illinois reflects, that no permits were required.

Bell cites cases to the effect that the interpretation given an ordinance by the body charged with implementation of the ordinance may be reflective of compatability with the legislative intent, especially where that interpretation has been given over a long period of time without legislative intervention. *Churchill Truck Lines, Inc. v. Transportation Regulation Board of Iowa Department of Transportation,* 274 N.W.2d 295, 297–98 (Iowa 1979); *Schmitt v. Iowa Department of Social Services,* 263 N.W.2d 739, 745 (Iowa 1978); *First National Bank of Ottumwa v. Bair,* 252 N.W.2d 723, 725 (Iowa 1977); *Iowa National Industrial Loan Co. v. Iowa State Department of Revenue,* 224 N.W.2d 437, 440 (Iowa 1974).

We agree that the actions of those charged with enforcing the statute, along with agreement between the city and Iowa-Illinois, reflect intent to exempt these two companies from the requirement of obtaining a permit.

We affirm the trial court's ruling of partial summary judgment on the issue of nuisance per se.

### III. Retroactive Application of the Amended Code

The section of the Iowa Administrative Code requiring guy wires be color marked was passed in 1979. The wires on the pole which was located on Rockingham Road were in existence prior to the amendment, and the court found there was no duty to replace the guards on the wires in existence before the law, and that the Code section could only show the "state of the art."

Plaintiffs first argues that requiring the company to change the guards to a color does not involve retrospective application of the statute. Plaintiffs refer to cases which indicate that a statute does not necessarily involve retroactive application simply because it relies on antecedent facts for its application, or when applied to a condition that exists at the time the act becomes effective. *State ex rel. Turner v. Limbrecht,* 246 N.W.2d 330, 333 (Iowa 1976); *In the Interests of Ponx,* 276 N.W.2d 425, 427, 433 (Iowa 1979); *Creighan v. City of Pittsburgh,* 389 Pa. 569, 575, 132 A.2d 867, 870–71 (1957). It is obvious from these cases and other statements of our courts that a law is retrospective when it affects vested rights or a contractual obligation. *Id.* However, we find the following statement provides the proper guidelines in deciding if retrospective application of a law is involved:

> A retroactive (or retrospective) law is one which "takes away or impairs vested rights acquired under existing laws, or creates a new obligation, *imposes a new duty,* or attaches a new disability in respect to transactions or considerations already past."

*Walker State Bank v. Chipokas,* 228 N.W.2d 49, 51 (Iowa 1975) (emphasis added). Clearly, a new duty was imposed on the company to install colorful guards on guy wires. This fits the definition provided by our courts in indicating what laws are retrospective in effect.

Our next question involves whether the statute should be applied retrospectively or prospectively only. To make this decision we look to legislative intent. *State ex rel. Turner v. Limbrecht,* 246 N.W.2d 330 (Iowa 1976). The court is to presume that the statute should be applied prospectively. *Id.* at 332; *City of Monticello v. Adams,* 200 N.W.2d 522, 525 (Iowa 1972). However, if there is "clear" legislative intent to the contrary, the law will be applied retrospectively. *Limbrecht,* at 332. This presumption applies when the law is substantive, but does not apply where the rule is remedial or procedural only. *Id.* In that instance the courts will give the law both prospective and retrospective effect. *Id.*

In describing the difference between substantive and remedial or procedural laws, the courts have indicated, "Substantive law is '... that part of the law which creates, defines, and regulates rights,'" and "Procedural law is '... the practice, method, procedure, or legal machinery by which the substantive law is enforced or made effective'". *Limbrecht,* at 332 (citations omitted).

The change here does not provide a new remedy or describe a new procedure. Rather, it imposes a new duty on the company to increase warnings of the presence of guy wires to the public. We believe the definitions we have referred to show the law enacted here was substantive and not procedural.

Under the dictates of *Limbrecht,* the law will apply prospectively only unless there is clear legislative intent to the contrary. To determine legislative intent, we look to; (1) the language of the act, (2) consider the manifest evil to be remedied, and (3) determine whether there was a prior statute governing the mischief the new act intends to remedy. *Id.* at 333.

Plaintiffs refer us to the discussion of the purpose of the law accompanying its adoption. There it is indicated it "shall supersede all conflicting rules of any such utility which were in force and effect prior

to the adoption of this chapter." Iowa Admin.Code § 250–25.1(1) (1979). The evil to be remedied is providing warning to the public of the presence of the guy wires. This evil had been previously addressed since the company was required to place guards on the wires. The change involves increasing the warning to the public through bright coloration of the guards.

Plaintiff says this is similar to the situation described in *Limbrecht:*

> The preamble indicates legislative awareness of actions already deemed to be consumer frauds. Addressing the existing frauds contradicts any contention the legislature was dealing only with future conduct. More importantly the language indicates the legislature intended to improve the regulatory and enforcement procedures then existing. It is certainly not inferable from such language that prospective application only was intended by the legislature.
>
> We believe the legislature intended the section to have retrospective application.

*Limbrecht* at 333–34.

■ Although both here and in *Limbrecht* the intent was to further eliminate the manifest evil, there is an important distinction between *Limbrecht* and the case here. In *Limbrecht* the court determined the statute in question was remedial and therefore presumed it should be applied prospectively and retrospectively. *Id.* Here we have decided the law in question is substantive and presume it is prospective only.

In addition, the general rule has been stated that when a statute provides a change or act "shall be" occurring, that reflects the express intention of the legislature that it excepts past acts and applies to the future only. 82 C.J.S. *Statutes* § 413 (1953). Our courts recognized this in stating use of the word "shall" in a statute indicates future application. *Krueger v. Rheem Manufacturing Company,* 260 Iowa 678, 681, 149 N.W.2d 142, 144 (1967). The Code section involved here states:

> The ground end of anchor guys exposed to pedestrian or vehicle traffic *shall be* provided with a substantial marker not less than eight feet long. The guy markers should be of a conspicuous color.

Iowa Admin.Code § 250–25.2(2)(c) (1979). (emphasis added). We believe this language supports the presumption the statute is to apply prospectively only and the company was not under a duty to retrofit the guy wires with color-marked guards. We affirm the trial court's motion in limine and motion to adjudicate law points on this issue.

### IV. Motion to Continue

Plaintiffs' final complaint comes from the trial court's denial to grant a motion of continuance. Plaintiffs mention this issue in its statement of the case, but do not argue the point in its brief or reply brief. We agree with defendants that the issue has been waived by plaintiffs. Iowa R.App.P. 14(a)(3).

We remand the case for further proceedings consistent with our opinion.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.